No. 2-09-1003      Filed:  10-20-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| HYTEL GROUP, INC., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant and Cross-Appellee, | ) | |
| | ) | |
| v. | ) | No. 08--L--717 |
| | ) | |
| MICHELLE Z. BUTLER, | ) | Honorable |
| | ) | Robert B. Spence, |
| Defendant-Appellee and Cross-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the opinion of the court:

The plaintiff, Hytel Group, Inc., filed suit against a former employee, the defendant, Michelle Butler, on December 15, 2008, alleging that she breached fiduciary duties and made fraudulent misrepresentations.  Butler filed two motions to dismiss the complaint, one based on section 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 2008)) and the other premised on the Citizen Participation Act (Act) (735 ILCS 110/1 et seq. (West 2008)), which provides a procedure for early-stage dismissals of certain claims and the opportunity to recover attorney fees expended in defending against those claims.  On April 30, 2009, the trial court granted the motion based on the Act.  The trial court later awarded Butler some, but not all, of the attorney fees she requested.  After its motion to reconsider was denied, Hytel appealed the dismissal of its complaint, and Butler cross-appealed the trial court's refusal to award her certain of her attorney fees.  We affirm as modified.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2008, Hytel hired Butler as comptroller for the company. On June 4, 2008, Hytel's lender, GBC Funding, LLC, filed a verified complaint and an emergency motion seeking the appointment of a receiver for Hytel. The complaint alleged that Hytel was in default on several of its obligations under the loan agreement, and that beginning in January 2008 GBC Funding had sent Hytel several notices of default. The complaint also alleged that, in May 2008, Hytel entered into agreements with GBC Funding under which GBC Funding would forbear from exercising its rights under the loan agreement and Hytel would, among other things, "engage and fully cooperate with a Chief Restructuring Officer" who was acceptable to GBC Funding. Jack Cochran was selected as the chief restructuring officer and was retained as of May 21, 2008. However, Hytel's president, Scott Johansen, allegedly did not cooperate with Cochran, refused to permit Cochran to control disbursements, and continued to take money from the company for his own use. The complaint alleged that Cochran therefore resigned on June 3, 2008. GBC Funding filed its suit the following day.

On June 10, 2008, Hytel fired Butler. On August 3, 2008, Butler filed a wage claim with the Illinois Department of Labor, seeking the payment of approximately $2,300 in final wages.

On December 15, 2008, Hytel filed a two-count complaint against Butler. Count I, titled "Breach of Fiduciary Duty," alleged that, as comptroller, Butler owed Hytel a fiduciary duty of loyalty and had a further duty to disclose "all material information to management." The complaint alleged that Butler breached these duties in that she: "had been unable" to prepare financial statements for the year that ended in December 2007, and also failed to prepare interim financial statements for any month during which she was employed; spoke with Cochran "on multiple

occasions, including June 6, 2008," during which conversations Cochran told Butler of the status of GBC Funding's litigation against Hytel and assured her that she would be kept informed; and did not advise Johansen of these conversations, or advise Hytel's management that GBC Funding "had promised Butler" that she could remain as comptroller in the event that GBC Funding began exercising control over Hytel through Cochran. The complaint alleged that Butler also breached her fiduciary duty in that she deliberately did not perform her duties (presumably, this refers to not preparing financial reports) "because of the developed relationship with" GBC Funding. Immediately following this allegation, Hytel alleged that Butler "was not capable of performing the work as her resume contained misrepresentations as to her competency." Hytel sought $1 million in compensatory damages for these alleged breaches of fiduciary duty and $3 million in punitive damages, along with the forfeiture and repayment of all of the wages ever paid to Butler.

In count II, the fraud claim, Hytel alleged generally that Butler's actions described in count I were done with the intent that Hytel rely on her and further that Butler represented that she was "attempting to prepare financial statements which would cure defaults and also allow the company to obtain alternate financing." The complaint alleged that these representations were knowingly false, "in that at the time she was discussing with [GBC Funding] and Jack Cochran employment that she would be given once management was replaced." The fraud count also contained general allegations that Butler's communications with Cochran, GBC Funding, and its auditors were "to the detriment" of Hytel, that Hytel "reasonably relied on her representations," and that Hytel was "damaged thereby." Like count I, count II prayed for a total of $4 million in damages, plus interest and costs.

On February 17, 2009, Butler filed two motions to dismiss the complaint, each arguing a different basis for dismissal. The first motion was based upon section 2--615 of the Code (735 ILCS 5/2--615 (West 2008)) and argued that, even taking the allegations of the complaint as true, they failed to state a cause of action for breach of fiduciary duty or for fraud. Butler also argued that, although Hytel's claims were based in part upon the filing of GBC Funding's receivership action, Hytel failed to attach the relevant pleadings to its complaint. Butler then attached various pleadings and motions from that case that was mentioned by Hytel in its complaint against her (the initial complaint and emergency motion for appointment of a receiver, filed June 4, 2008; and a motion for order of replevin, filed July 24, 2008). Butler argued that these filings contradicted the allegations of Hytel's complaint, showing that she did not cause Hytel's default because Hytel was in default before she was even hired.

Butler's second motion was based upon the Act, and it argued that Hytel's suit against her was in retaliation for her wage claim. In support, Butler attached her own affidavit, in which she averred that she had made repeated attempts to obtain her last paycheck but had been turned away by Johansen; that eventually she had told him that if she did not receive her pay she would have to file a wage claim with the Department of Labor; and that Johansen told her that if she did that, he would "sue [her] a--, honey." Hytel filed responses to both motions, arguing among other things that the complaint properly alleged the claims therein and that a "purely private" dispute such as Butler's wage claim was not within the scope of the Act, and attaching an affidavit from Johansen denying that he and Butler ever discussed her wage claim or that he made the alleged statement. The motions were fully briefed and on April 16, 2009, the trial court heard oral argument on the motions.

On April 30, 2009, the trial court issued a written decision in which it found that, under the plain language of the Act, the Act applied to Butler's wage claim. The trial court further found that Hytel had not met the burden of proving, by clear and convincing evidence, that Butler's acts were not immunized from liability by the Act. However, the trial court went on to consider the merits of Hytel's complaint, reasoning that a determination of whether Hytel had stated a viable claim against Butler would be an independent indicium of whether its suit was brought for an improper purpose under the Act. The trial court found that Butler did not have a fiduciary relationship with Hytel but rather an employee-employer relationship, and thus the complaint failed to state a cause of action for breach of fiduciary duty. The trial court further found that, even if Butler's representations regarding her competency to prepare financial reports and perform other financial oversight tasks were false, the complaint did not sufficiently allege the remaining elements of fraud. Finally, the court found that the complaint as a whole did not allege any facts supporting the $4 million in damages requested. The court concluded by dismissing the complaint pursuant to the Act and continuing the case for status and for the filing of a motion for attorney fees.

On May 14, 2009, Butler filed a motion for attorney fees, seeking $38,233.50. On the same date, Hytel filed a motion to reconsider, in which it argued that Butler's wage claim was not protected conduct under the Act and that it had adequately pled its claims for breach of fiduciary duty and fraud. In its motion to reconsider, Hytel also noted that dismissals pursuant to section 2--615 are usually without prejudice, unless it is apparent that the plaintiff can prove no set of facts that would entitle it to recover, and it asked that the court grant it 28 days in which to file an amended complaint. Hytel did not attach any amended complaint to its brief, nor did it indicate in what manner it proposed to amend its complaint. A few days later, Butler filed a motion seeking "an

express order of dismissal of the complaint, with prejudice," pursuant to section 2--615, as an alternative basis for dismissal in the event that the dismissal under the Act was later invalidated on appeal. Butler also sought to recover attorney fees (beyond those imposed under the Act) pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137), on the ground that the entire action was frivolous. Each party filed written responses to the other's motions.

On July 10, 2009, the trial court heard argument on the motions and then ruled. The trial court denied Hytel's motion to reconsider and Butler's motion for Rule 137 sanctions. The trial court granted Butler's motion for a ruling on her motion to dismiss pursuant to section 2--615, and ruled that section 2--615 provided an alternate ground for dismissal of the complaint (in addition to the dismissal under the Act). However, it held that the dismissal under section 2--615 would be with prejudice only as to count I (the claim for breach of fiduciary duty), while the dismissal of count II (the fraud claim) would be without prejudice. As to attorney fees, the trial court ordered Butler to refile her motion for attorney fees pursuant to the Act, distinguishing between the time spent on each of her motions to dismiss, "granting that there may be some overlap." Butler refiled her motion for fees, subtracting over $14,000 in fees incurred solely in connection with the section 2--615 motion but also including a roughly equivalent amount of fees incurred since the date of the earlier motion for fees. Hytel responded, objecting that the reduced fees still were not reasonable and that no new fees should be permitted. On August 20, 2009, the trial court disallowed $4,306 of the requested fees because they had been incurred in preparing and presenting the two motions for fees, but it granted the remainder of the fees requested ($34,998.27), finding that the attorney's time spent and hourly rates were reasonable. Hytel filed a timely notice of appeal, appealing from the trial court's orders of April 30, July 10, and August 20, 2009. Butler cross-appealed, arguing that the Act

allowed her to recover the attorney fees incurred in preparing her section 2--615 motion to dismiss and the motions for fees.

ANALYSIS

The Appeal

We begin by addressing the issues raised in Hytel's appeal. Hytel first argues that the trial court erred in holding that Butler's act of filing a wage claim with the Department of Labor was protected under the Act. As this is an issue of statutory interpretation, and additionally involves the review of a dismissal, our review is de novo. Lee v. John Deere Insurance Co., 208 Ill. 2d 38, 43 (2003).

The Act became law in August 2007. Section 5 of the Act provides some background on the impetus behind the Act:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that the constitutional rights of citizens and organizations to be involved and participate freely in the process of government must be encouraged and safeguarded with great diligence. The information, reports, opinions, claims, arguments, and other expressions provided by citizens are vital to effective law enforcement, the operation of government, the making of public policy and decisions, and the continuation of representative democracy. The laws, courts, and other agencies of this State must provide the utmost protection for the free exercise of these rights of petition, speech, association, and government participation.

Civil actions for money damages have been filed against citizens and organizations of this State as a result of their valid exercise of their constitutional rights to petition, speak

freely, associate freely, and otherwise participate in and communicate with government. There has been a disturbing increase in lawsuits termed 'Strategic Lawsuits Against Public Participation' in government or 'SLAPPs' as they are popularly called.

The threat of SLAPPs significantly chills and diminishes citizen participation in government, voluntary public service, and the exercise of these important constitutional rights. This abuse of the judicial process can and has been used as a means of intimidating, harassing, or punishing citizens and organizations for involving themselves in public affairs." 735 ILCS 110/5 (West 2008).

The Act is one of many anti-SLAPP statutes enacted by states in the last several years. The archetypal SLAPP arises out of a scenario in which a group of citizens voices to government officials its objections to a project by a developer, who then sues the group of citizens for defamation, intentional interference with economic interest, or some similar cause of action, alleging extraordinarily high damages. The purpose of the lawsuit is not necessarily to prevail on the claim (the lawsuit may well be meritless) but to silence the citizens through the threat of damages and litigation expenses. E. Madiar & T. Sheahan, Illinois' New Anti-SLAPP Statute, 96 Ill. B.J. 620 (December 2008). However, the Act (like most other anti-SLAPP statutes) is written broadly enough to apply to the exercise of the constitutional rights of speech and petition outside of the archetypal scenario. See 96 Ill. B.J. at 621.

The Act is designed to permit the summary dismissal of a SLAPP and the recovery of some of the attorney fees and costs incurred as a result of defending against a SLAPP. As an initial matter, the Act immunizes from liability all "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government," unless those acts were "not genuinely aimed

at procuring favorable government action, result, or outcome." 735 ILCS 110/15 (West 2008). The Act permits anyone who is defending against a claim in a judicial proceeding to file a "motion to dispose of [the] claim *** on the grounds that the claim is based on, relates to, or is in response to any act *** of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government." 735 ILCS 110/15 (West 2008). Upon the filing of such a motion, discovery is stayed except in very limited circumstances, and the court must hear and decide the motion within 90 days. 735 ILCS 110/20(a), (b) (West 2008). The court must grant the motion and dismiss the claim unless the nonmovant "has produced clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by this Act." 735 ILCS 110/20(c) (West 2008). If the motion is successful and the case is dismissed, the court must award the moving party reasonable attorney fees and costs "incurred in connection with the motion." 735 ILCS 110/25 (West 2008).

Hytel argues that the legislature did not intend the Act to cover persons filing "private" claims such as Butler's wage claim, but only those persons who exercise their rights of free speech and petition in connection with an issue of public concern. Hytel points to section 5 of the Act, which outlines the Act's purpose:

"It is in the public interest and it is the purpose of this Act to strike a balance between the rights of persons to file lawsuits for injury and the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government; to protect and encourage public participation in government to the maximum extent permitted by law; to establish an efficient process for identification and adjudication of SLAPPs; and to

provide for attorney's fees and costs to prevailing movants."  735 ILCS 110/5 (West 2008).

Hytel argues that this section demonstrates that the Act is concerned only with citizen participation in governmental decisionmaking.  Thus, it argues, the Act should not be read as allowing a litigant to bring a motion to dismiss under the Act in response to what it characterizes as a purely private dispute.

In construing a statute, our task is to "ascertain and give effect to the legislature's intent." Lieb v. Judges' Retirement System, 314 Ill. App. 3d 87, 92 (2000).  The best indicator of the legislature's intent is the plain language of the statute. Lee, 208 Ill. 2d at 43.  "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." Lee, 208 Ill. 2d at 43.  Here, the language of the Act does not restrict its application to those situations in which the person seeking its shelter exercised his or her rights of free speech and petition to advance some issue of public concern.  To the contrary, the scope of the Act is expressed in broad terms, protecting "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government *** regardless of intent or purpose."  (Emphasis added.)  735 ILCS 110/15 (West 2008).  Moreover, section 5 of the Act specifically lists "claims" as a protected type of communication with the government.  735 ILCS 110/5 (West 2008) ("The information, reports, opinions, claims, arguments, and other expressions provided by citizens are vital to *** the operation of government *** and the continuation of representative democracy").  Finally, section 30(b) of the Act commands that the Act is to "be construed liberally to effectuate its purposes and intent fully." 735 ILCS 110/30(b) (West 2008).

The right to petition for redress of grievances is guaranteed by the first amendment to the United States constitution (U.S. Const., amend. I), and it includes the right to file a claim before a judicial or administrative body. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510, 30 L. Ed. 2d 642, 646, 92 S. Ct. 609, 611-12 (1972) (the right of access to the courts is an aspect of the first amendment right to petition the government for redress of grievances, and one that extends to "all departments of the Government," including administrative agencies). Although the right to petition overlaps in many respects with the right of free speech also guaranteed by the first amendment, it provides additional protection for communication specifically aimed at the redress of grievances. "By separately preserving this right, the Petition Clause helps to give persons a sense of participation in their government, to better inform the government, and to provide the opportunity for a peaceful settlement of disputes, advancement of the law, and correction of social problems." C. Andrews, Motive Restrictions on Court Access: A First Amendment Challenge, 61 Ohio St. L.J. 665, 674 (2000).

We have no difficulty in concluding, as the trial court did, that Butler's wage claim filed with the Department of Labor was an exercise of her right to petition for redress of grievances. See California Motor Transport, 404 U.S. at 510, 30 L. Ed. 2d at 646, 92 S. Ct. at 611-12; see also 735 ILCS 110/10 (West 2008) (defining "government" to include departments and agencies of the state). The express language of the Act protects any action taken in furtherance of a person's right to petition, regardless of the person's possibly selfish motivation[1] or the fact that the action might

---

[1]There is one exception to this rule that the motivation for the action is irrelevant: if an action that would otherwise be protected under the Act was "not genuinely aimed at procuring favorable government action, result, or outcome"--that is, the actor had no reasonable expectation of success

involve a personal claim before an administrative agency rather than testimony before a legislative body, as in the archetypal example. 735 ILCS 110/15 (West 2008). As we have said, the language of the Act is the best evidence of the legislature's intent in enacting it. Lee, 208 Ill. 2d at 43. The Act contains no "public concern" requirement. Thus, regardless of whether Butler's wage claim raised an issue of public concern, it is within the language of the Act and was therefore intended to be protected by the Act.[2]

In reaching the conclusion that the Act does not require that the actor exercised his or her constitutional rights in connection with an issue of public concern, we are not holding that Butler's wage claim was a purely private dispute, as Hytel claims. Although Illinois courts have held that wage claims do not sufficiently "strike at the heart of a citizen's social rights, duties, and responsibilities" (Palmateer v. International Harvester Co., 85 Ill. 2d 124, 130 (1981)) such that the tort of retaliatory discharge should be expanded to encompass such claims (McGrath v. CCC Information Services, Inc., 314 Ill. App. 3d 431, 440 (2000)), the prompt payment of wages by employers is not a matter entirely devoid of public concern (People ex rel. Martin v. Lipkowitz, 225 Ill. App. 3d 980, 985 (1992) ("[a]n employer's denial of benefits earned by its employees burdens the State financially and socially, *** by decreasing the tax base and potentially depleting State

_____

in its petition or speech, but wished solely to injure the other party through harassment, the imposition of costs, or delay--the action is not immunized. 735 ILCS 110/15 (West 2008). Hytel has not argued that this exception applies to Butler's wage claim.

[2]The lack of a "public concern" restriction in the Act is not unusual among anti-SLAPP statutes. Of the 27 states (at last count) that have anti-SLAPP statutes, perhaps one-third restrict protection to communications involving a matter of public concern.

assistance funds")). Indeed, we presume that such public concerns underlie the decision to authorize the Department of Labor to pursue wage claims, rather than requiring unpaid employees to pursue their employers themselves. However, we ultimately express no opinion on whether Butler's wage claim involves a matter of public concern because such public concern is not dispositive under the Act.

Hytel cites California case law in support of its public concern argument, but its reliance on that case law is misplaced. California was one of the first states to enact anti-SLAPP legislation, and it has a comparatively well-developed body of case law in connection with its statute. For this reason, California law may be useful in shedding light on issues arising under anti-SLAPP statutes, including the Act. On this particular issue, however, California law is inapplicable because the language of its anti-SLAPP statute differs from that of our Act, imposing in some instances a requirement that the communication involve a public concern in order to be protected. See Cal. Civ. Proc. Code §425.16(e)(3), (e)(4) (West 2008) (if the statement was not made in a legislative, executive, or judicial proceeding, or in connection with a matter under consideration by a legislative, executive, or judicial body, it must involve "an issue of public interest" to be covered by the statute). By contrast, as we have discussed, the Act includes no such restriction. Accordingly, we are not persuaded by Hytel's reliance on California case law.

Hytel next argues that Butler does not come within the protection of the Act because the actions that form the basis of its complaint--Butler's alleged breaches of fiduciary duty and misrepresentations--were not exercises of her right to petition, nor were they protected in any other way by the Act. Hytel asserts that this is a defense to dismissal under the Act--that "the acts of the moving party [were] not immunized" from liability by the Act. Hytel argues that, because its lawsuit

against Butler was not premised on her protected action of filing a wage claim, but on other actions that are not immunized under the Act, the trial court's dismissal based on the Act was improper. Hytel argues that if the Act can be utilized to procure the summary dismissal of any subsequent lawsuit between parties who were once adverse to each other on an issue involving the exercise of speech or petition rights, no matter how unrelated the subsequent lawsuit may be, the Act goes beyond what the legislature intended and could result in the dismissal of countless meritorious lawsuits and prevent the trial of any counterclaim.

Hytel's argument poses a question of interpretation involving the Act. As written, section 15 permits the filing of a motion to dismiss any claim that is alleged to be either based on or brought in retaliation for the movant's exercise of his or her first amendment rights:

"This Act applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government." (Emphasis added.) 735 ILCS 110/15 (West 2008).

Section 15 further provides that such exercises of first amendment rights are immunized by the Act, unless they fall within a narrow exception:

"Acts in furtherance of the constitutional rights to petition, speech, association, and participation in the government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15 (West 2008).

Because the Act allows a litigant to seek dismissal of not only those claims arising directly out of his or her protected action (a defamation claim premised on the movant's protected speech, for

instance), but also those claims allegedly brought "in response to" (i.e., in retaliation for) the protected action, it appears to apply to claims that are, on their face, unrelated to the protected action.

However, the Act also permits nonmovants to raise the defense that "the acts of the moving party" were not immunized from liability by the Act. This language is contained in section 20 of the Act, which immediately follows section 15 and sets out the procedures to be utilized when a movant claims that a lawsuit is subject to the Act and moves to dismiss it:

> "(a) On the filing of any motion as described in Section 15, a hearing and decision on the motion must occur within 90 days after notice of the motion is given to the respondent.
>
> ***
>
> (c) The court shall grant the motion and dismiss the judicial claim unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from *** liability by this Act." 735 ILCS 110/20 (West 2008).

The question thus becomes what that phrase--"the acts of the moving party"--means.

Hytel argues that "the acts of the moving party" refers to Butler's acts that form the basis for its complaint--namely, Butler's alleged failures to accurately describe her qualifications, prepare financial reports, and tell Hytel's management about her conversations with GBC Funding and Cochran--and that these acts are not immunized from liability by the Act. In Hytel's view, this interpretation of the phrase is necessary to prevent the Act from sweeping in claims that are unrelated to the core first amendment conduct meant to be protected by the Act merely because they are counterclaims or were otherwise filed "in response to" the movant's claim. Hytel argues that,

because Butler's actions as alleged in its complaint are not immunized by the Act, the trial court should have denied the motion to dismiss brought pursuant to the Act, and the trial court's award of attorney fees under the Act should also be vacated.

Butler counters that Hytel's approach would have the effect of reading the language encompassing retaliatory suits ("in response to") out of the statute, because under Hytel's interpretation a suit that was not directly based on a movant's protected actions, but that nevertheless had clearly been brought "in response to" those actions, could never be dismissed under section 20(c) despite being expressly identified in section 15 as an appropriate target for dismissal. Butler argues that the Act should be construed to give meaning to all of its provisions, including the "in response to" language, and that therefore section 20(c)'s language regarding the "acts of the moving party" must be interpreted to refer to the movant's protected actions, rather than the acts allegedly forming the basis of the complaint. Under this interpretation, Hytel could defeat Butler's motion to dismiss under the Act only by producing clear and convincing evidence that Butler's action of filing a wage claim was not in fact immunized by the statute, because it was not genuinely aimed at procuring a favorable result from the government. As noted, Hytel neither raised nor proved this defense. Butler asserts that the trial court was therefore correct in holding that Hytel did not establish any defense to her motion to dismiss under the Act.

In interpreting a statute, we must strive to interpret it so as to give meaning to all of its provisions and avoid interpretations that would render any provision superfluous. Solon v. Midwest Medical Records Ass'n, 236 Ill. 2d 433, 440-41 (2010). Reading the Act as a whole, we find that section 20(c)'s phrase "the acts of the moving party" is an unambiguous reference to the actions identified in section 15 as subject to the Act's protection. Section 15 explicitly includes within the

Act's reach suits filed "in response to" petitioning activity as well as those "based on" such activity, thereby encompassing facially unrelated but retaliatory claims. Section 15 also provides that the only circumstance in which a petitioning activity is excluded from protection is if that activity was "not genuinely aimed at procuring favorable government action." Similarly, the sole manner in which a motion to dismiss may be defeated under section 20(c) is by establishing, by clear and convincing evidence, this same defense. This interpretation is consistent with the description in section 5 of the Act's purposes, which include preventing abusive litigation that chills the exercise of first amendment rights: the target of such litigation may feel just as intimidated by a facially unrelated but clearly retaliatory lawsuit as by a lawsuit based more directly on the exercise of those rights.

Hytel argues that, under this interpretation of the Act, no counterclaim or other claim filed after a movant's initial claim could ever survive a motion to dismiss under the Act. Hytel reasons that, because any lawsuit represents an exercise of the plaintiff's right to petition for redress of grievances (see California Motor Transport, 404 U.S. at 510, 30 L. Ed. 2d at 646, 92 S. Ct. at 611-12) and the Act contains no language restricting its scope to petitions regarding a matter of public concern, any counterclaim brought after an initial claim is filed would be considered a claim brought "in response to" protected petitioning activity and would therefore be barred by the Act.

We reject this argument because it ignores the court's role in determining which claims were filed "in response to" a protected first amendment activity and are therefore subject to motions to dismiss under the Act. Although the Act protects all lawsuits as petitioning activity, not every counterclaim or subsequent claim is brought with the retaliatory intent that makes it subject to dismissal under the Act. Accordingly, when a lawsuit does not arise directly out of the protected activity but instead is alleged to have been brought "in response to" the protected activity, it becomes

vital that the trial court engage in a careful examination of the allegations of the complaint and the surrounding facts to determine whether it is truly barred by the Act as a retaliatory suit. We believe that this requirement will prevent the application of the Act beyond its intended scope. For instance, suppose that a homeowner sues a builder for breach of contract and the builder files a counterclaim for nonpayment or quantum meruit. Under the Act, even though the dispute between the parties is private, both of these claims represent the litigants' exercise of their right to petition the government for redress of grievances, and thus both claims are protected activity under the Act. However, that does not mean that the claim that happens to have been filed later (in this example, the counterclaim) may be automatically dismissed under the Act. Instead, the court must determine whether the later-filed claim is retaliatory. If it states a potentially valid cause of action and seeks damages within the ordinary range recoverable under the facts of the case, and there are no other facts suggesting an intent to chill the other party's right to seek redress, then the later claim has not been brought "in response to" the other party's exercise of first amendment rights within the meaning of the Act. Thus, it would not be subject to a motion to dismiss under the Act. We anticipate that the vast majority of counterclaims will lie outside the Act's coverage.

Determining the Act's application to possibly retaliatory claims must be done on a case-by-case basis. We note that, in this case, the trial court conducted a painstaking analysis of whether Hytel's suit was a retaliatory claim that fell within the Act or a valid claim that simply happened to have been filed after Butler filed her wage claim. In doing so, the trial court considered whether the complaint stated a valid claim and concluded that it did not. This was an appropriate inquiry, because retaliatory intent may be inferred when a claim lacking merit is filed shortly after the exercise of protected rights. See Herman v. Power Maintenance & Constructors, LLC, 388 Ill. App.

3d 352, 364 (2009) (lack of a proper basis for action may raise the inference that true motive was retaliatory); Hoffelt v. Department of Human Rights, 367 Ill. App. 3d 628, 638 (2006) (temporal proximity between a protected activity and an adverse action may indicate retaliatory intent). The trial court also considered the extraordinarily high damages sought in this case and concluded that the complaint failed to sufficiently allege any facts to support such a high ad damnum. Again, the trial court appropriately took into account the inference that extremely high damages that are not supported by the facts alleged are intended to strike fear into the defendant rather than being a good-faith estimate of the extent of the injury sustained. See M. Sobczak, SLAPPed in Illinois: The Scope and Applicability of the Illinois Citizen Participation Act, 28 N. Ill. U. L. Rev. 559, 563 (Summer 2008) (a complaint seeking compensatory damages in the millions is one hallmark of a SLAPP). Here, our review of the record supports the trial court's determination that Hytel's complaint fell within the Act's description as a claim filed "in response to" Butler's wage claim. However, this determination was based on the allegations and facts of the case at hand and therefore cannot be applied in a blanket fashion to claims that may arise in other cases.[3]

Hytel next argues that, if the Act is interpreted as permitting the dismissal of its lawsuit against Butler, the Act is unconstitutional "as an infringement on the judiciary," because it "changes the burden of proof, changes the rules regarding when discovery can be commenced, changes the

---

[3]Although Hytel is incorrect to fear the wholesale dismissal of all counterclaims, the scope of the Act is unquestionably broad. See 96 Ill. B.J. at 620-21 (as written, the Act appears broader than any other anti-SLAPP statute). We note that only one other anti-SLAPP statute contains a similar provision including claims brought "in response to" protected activities. See Utah Code Ann. §78B--6--1403 (West 2008).

rules regarding meritorious pleadings (Rule 137), and makes every counterclaim *** a questionable act under the *** Act."[4] Butler argues that Hytel forfeited this argument by failing to raise it in the trial court. We agree that the record is devoid of any indication that Hytel challenged the constitutionality of the Act below. A reviewing court will not consider arguments not presented to the trial court. In re County Treasurer and ex officio County Collector, 373 Ill. App. 3d 679, 702 (2007). That the argument concerns the constitutionality of a statute does not make a difference. Villareal v. Peebles, 299 Ill. App. 3d 556, 560 (1998). Moreover, even if the argument had not been forfeited for failure to raise it below, it would be forfeited for lack of support in this court. 210 Ill. 2d R. 341(h)(7). Hytel's entire argument regarding the constitutionality of the Act comprises a page and a half and does not identify either the "discovery rules" or the "burden of proof *** established by the legislature" that the Act purportedly contravenes, and it does not explain why the Act violates the separation-of-powers doctrine, if that is what Hytel is contending. "A reviewing court is entitled to have the issues before it clearly defined and is not simply a repository in which appellants may dump the burden of argument and research; an appellant's failure to properly present his own arguments can amount to waiver of those claims on appeal." People v. Chatman, 357 Ill. App. 3d 695, 703 (2005). For all of these reasons, we find that Hytel has forfeited its argument that the Act is unconstitutional.

Hytel's final argument on appeal is that the trial court erred in dismissing with prejudice count I of its complaint, the breach of fiduciary duty claim, pursuant to section 2--615. As we have

---

[4]After filing its notice of appeal and its opening brief, Hytel served notice of its claim of unconstitutionality and a copy of its brief upon the Attorney General as required by Supreme Court Rule 19 (210 Ill. 2d R. 19). The Attorney General did not seek to intervene or file a response.

upheld the trial court's dismissal of Hytel's entire complaint under the Act, we need not reach this argument. However, we note that even if we had not affirmed the dismissal under the Act, the result would be unchanged. Hytel has not appealed the trial court's alternate dismissal of its complaint under section 2--615, only the fact that the dismissal was entered with prejudice as to count I. We conclude below that the dismissal of count I with prejudice was not an abuse of discretion and, as Hytel chose to appeal rather than replead count II, count II remains dismissed as well. Flores v. Palmer Marketing, Inc., 361 Ill. App. 3d 172, 179 (2005).

The trial court dismissed count I on the ground that under Illinois law an employee who is not an officer or director of a corporation does not owe a fiduciary duty to the corporation, and thus the complaint did not adequately plead a fiduciary relationship. Hytel does not argue that count I should not have been dismissed at all, but rather that the dismissal should have been without prejudice so that it could amend its complaint to remedy the deficiencies. However, Hytel did not provide the trial court with an amended complaint that it wished to file, nor did it identify in any other way (either to the trial court or on appeal) the amendments that it believed would cure the failure to state a claim. The decision whether to permit the amendment of a complaint is a matter within the trial court's discretion, and we will not reverse its decision absent an abuse of discretion. Alpha School Bus Co. v. Wagner, 391 Ill. App. 3d 722, 749 (2009).

The right to amend a complaint is not absolute. Generally, a trial court should exercise its discretion liberally in favor of allowing amendments to pleadings if doing so will further the ends of justice. Alpha School Bus, 391 Ill. App. 3d at 748. However, one of the primary factors that a trial court should consider in making this determination is whether the proposed amendment would cure the defective pleading. Alpha School Bus, 391 Ill. App. 3d at 748; see also Edwards v. City of

Henry, 385 Ill. App. 3d 1026, 1032 (2008). Where the party seeking to amend does not attach a proposed amended pleading to its motion or otherwise specify the new allegations that it would include, a trial court has no basis on which to consider whether the amendment would cure the defects in the current pleading. Here, Hytel has not submitted a proposed amended pleading or identified any new allegations that it wished to make. (Indeed, Hytel did not even move to amend its pleadings, but simply included a request to do so at the end of its motion to reconsider.) Nor has Hytel shown that the legal basis for the trial court's dismissal of count I was incorrect. The sole case Hytel cites in support of its assertion that it could successfully amend its complaint if permitted to do so is distinguishable, as it is a federal criminal case regarding an enhancement under the sentencing guidelines for abuse of a position of trust. United States v. Deal, 147 F.3d 562 (7th Cir. 1998). Accordingly, the trial court did not abuse its discretion in dismissing count I with prejudice.

The Cross-Appeal

In her cross-appeal, Butler argues that the trial court erred in denying her any recovery for the attorney fees she incurred in connection with (1) the preparation and presentation of her motions for attorney fees, and (2) her motion to dismiss pursuant to section 2--615. Hytel did not file any response to Butler's cross-appeal. However, as the issue is relatively straightforward, we may consider Butler's argument despite the absence of a response brief, pursuant to First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133 (1976) (a reviewing court should decide the merits of an appeal where the record is simple and the claimed error is such that a decision can be made easily without the aid of an appellee's brief).

As Butler notes, the parties to a lawsuit must ordinarily bear their own legal expenses in the absence of a fee-shifting statute. However, the Act contains such a fee-shifting provision, stating

that "[t]he court shall award a moving party who prevails in a motion under this Act reasonable attorney's fees and costs incurred in connection with the motion." 735 ILCS 110/25 (West 2008). The trial court interpreted this provision to mean that Butler could be awarded those attorney fees and costs associated with her motion to dismiss based on the Act, but not those incurred in preparing either her motions for attorney fees or her motion to dismiss pursuant to section 2--615. The trial court's decision on both points raised in the cross-appeal rested on its interpretation of the Act, and we therefore review it de novo. Lee, 208 Ill. 2d at 43.

On several occasions, this court has held that a statute authorizing the recovery of attorney fees also authorizes the recovery of fees incurred in preparing the motion or petition for fees. See In re Marriage of Powers, 252 Ill. App. 3d 506, 512-13 (1993) (section 508 of the Illinois Marriage and Dissolution of Marriage Act permitted the trial court to award the wife attorney fees incurred in connection with her fee petition); Wayne Township Board of Auditors v. Ludwig, 154 Ill. App. 3d 899, 909-10 (1987) (where township officer was required to retain private counsel due to conflict of interest and statute required that his fees be paid in that situation, officer could recover fees incurred in connection with motion for fees); Rackow v. Human Rights Comm'n, 152 Ill. App. 3d 1046, 1064 (1987) (where Illinois Human Rights Act provided for the award of attorney fees to a successful litigant, inclusion of time spent preparing motion for fees was appropriate). Nevertheless, in each case the award of fees must be evaluated in light of the language of the statute at issue and the overall purpose of the statute. Powers, 252 Ill. App. 3d at 513.

Here, the statute authorizes the recovery of attorney fees "incurred in connection with the motion" to dismiss brought pursuant to the Act. 735 ILCS 110/25 (West 2008). "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a

whole," and thus "words and phrases must be interpreted in light of other relevant provisions of the statute." J.S.A. v. M.H., 224 Ill. 2d 182, 197 (2007). Accordingly, section 25 of the Act must be read together with section 5, which lists providing for "attorney's fees and costs to prevailing movants" as one of the purposes of the Act, and section 30(b), which commands that the Act be construed liberally to fully effectuate its purposes and intent. 735 ILCS 110/5, 30(b) (West 2008). In Wayne Township, we commented that, in general, refusing to award fees incurred in the preparation of a motion that was necessary to secure the award of fees to a victorious party "would dilute the effect of the statute by requiring successful litigants to incur additional costs to enforce their rights." Wayne Township, 154 Ill. App. 3d at 910. We believe that, inasmuch as the Act mandates the award of certain attorney fees and costs to a successful movant, it thereby requires the successful movant to prepare and present a fee petition. Just as in Wayne Township, refusing to reimburse the movant for this necessary expense would run counter to the express purpose of the Act. Reading all of the provisions of the Act together, therefore, we believe that section 25 permits the recovery of attorney fees incurred in preparing and presenting a motion for fees. We therefore modify the judgment in favor of Butler to include an additional $4,306, the amount previously identified as representing the fees that were disallowed because they were incurred during the preparation and presentation of her motions for fees.

The attorney fees and costs associated with Butler's motion to dismiss pursuant to section 2--615 stand on a different footing, however, for they were not necessary to advance the anti-SLAPP purposes of the Act. While it may have been commendable caution on the part of Butler and her attorneys that led her to file a section 2--615 motion at the same time as her motion under the Act, this was a strategic decision and not one compelled by the Act, and therefore the Act does not relieve

Butler of the costs of that decision.  See also <u>Sandholm v. Kuecker</u>, No. 2--09--1015, slip op. at 43 (October 18, 2010).  We therefore affirm the trial court's order denying Butler attorney fees and costs incurred in connection with her section 2--615 motion to dismiss.  This limitation on the fees and costs recoverable under the Act does not leave SLAPP defendants utterly without possible remedies for the legal expenses they may have incurred apart from those recoverable under the Act: to the extent that a SLAPP (or any other lawsuit) is not "well grounded in fact and *** warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law," or is "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," it may be subject to sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137), which could include attorney fees and costs not covered by the Act.

The judgment of the circuit court of Kane County is affirmed as modified.

Affirmed as modified.

BOWMAN and O'MALLEY, JJ., concur.