# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Stein v. Krislov*, 2013 IL App (1st) 113806

---

| | |
|---|---|
| Appellate Court Caption | ROBERT J. STEIN III, Plaintiff-Appellant, v. CLINTON A. KRISLOV and KRISLOV AND ASSOCIATES, LTD., Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-3806 |
| Opinion filed | June 28, 2013 |
| Rehearing denied | September 9, 2013 |
| Modified opinion filed | September 13, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a letter plaintiff attorney's former employer wrote to the judge in a federal action in which plaintiff was seeking class certification, the dismissal of plaintiff's claims for libel, a violation of the Wage Act, and breach of contract was reversed, since the trial court improperly applied the attorney litigation privilege to the defendant's letter, the libel claim was not meritless and did not fall within the scope of the SLAPP Act, and there was no showing that the Wage Act and breach of contract claims were without merit. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-4914; the Hon. Allen S. Goldberg, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

DiVincenzo Schoenfield Swartzman (Anthony S. DiVincenzo, of counsel), and Law Offices of Bahtiar Hoxha (Bahtiar Hoxha, of counsel), both of Chicago, for appellant.

Ungaretti & Harris LLP, of Chicago (Susan G. Feibus, Richard H. Tilghman IV, and Alexander J. Darr, of counsel), for appellees.

Panel

JUSTICE LAMPKIN delivered the judgment of the court, with opinion. Justices Hall and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff Robert Stein sued defendants Clinton Krislov and Krislov & Associates, Ltd. (K&A), for libel, violation of the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 (West 2002)), and breach of contract. Upon defendants' motion, the trial court dismissed plaintiff's third amended complaint, finding that defendants were entitled to immunity from all of plaintiff's claims pursuant to the Citizen Participation Act (Act) (735 ILCS 110/1 *et seq.* (West 2008)), commonly referred to as the anti-SLAPP (Strategic Lawsuits Against Public Participation) statute.

¶ 2      On appeal, plaintiff argues the Illinois Supreme Court's recent decision in *Sandholm v. Kuecker*, 2012 IL 111443, requires reversal because plaintiff's claims were not solely based on defendants' acts in furtherance of their rights of petition, speech, association, or other participation in government. Defendants respond that dismissal of all of plaintiff's claims was proper because they are entitled to immunity under the Act. Defendants also argue that the alleged defamatory act was protected by the absolute privileges for statements made in judicial proceedings and statements made in the discharge of a duty under the express authority of law.

¶ 3      Based on the following, we reverse the trial court orders dismissing plaintiff's third amended complaint and awarding defendants attorney fees under the Act, and we remand this cause.

¶ 4                          I. BACKGROUND

¶ 5      This case appears before us a second time. In the previous interlocutory appeal, defendants argued the trial court erred in denying their motion to dismiss, which raised the defense of absolute privilege against plaintiff's libel claims. We dismissed defendants' interlocutory appeal for lack of jurisdiction and concluded that the Act did not confer subject matter jurisdiction on this court. *Stein v. Krislov*, 405 Ill. App. 3d 538 (2010). Thereafter,

however, the Illinois Supreme Court, on February 16, 2011, amended Supreme Court Rule 306(a)(9) to allow an interlocutory appeal by permission from an order denying a motion to dismiss under the Act.

¶ 6    We adopt from our prior opinion those facts relevant to the current appeal:

"Plaintiff is an attorney that was employed by K&A from 1994-2001. Krislov is the sole shareholder. After leaving K&A, plaintiff and his firm were named as one of three firms representing the plaintiff on a motion for class certification in an action in a federal district court in Pennsylvania. While performing unrelated research, Krislov discovered plaintiff's motion for class certification in the Pennsylvania case. Attached to the motion was a description of plaintiff's and his firm's prior experience. On June 13, 2005, Krislov sent an unsigned letter to the judge presiding over the Pennsylvania case, advising that the representations made by plaintiff regarding his experience were 'beyond puffing' and were 'simply misstatements, known by the filers to be untrue.' The federal judge contacted the attorneys for the parties and provided them with a copy of Krislov's letter. On June 24, 2005, plaintiff responded by letter to the federal judge, disputing Krislov's claims and providing supporting documentation to verify plaintiff's and his firm's experience. On July 14, 2005, Krislov sent a reply letter to the federal judge, responding to plaintiff's June 24, 2005, letter. Ultimately, class certification was granted as to count I and denied, for reasons unrelated to Krislov's letter, as to counts II and III.

On May 10, 2006, plaintiff filed his first amended complaint against defendants, alleging libel and libel *per se* as a result of Krislov's letter, in addition to claims for vacation and bonus pay allegedly owed to him from his K&A employment. Defendants filed a motion under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2004)) to dismiss the libel claims, arguing that the June 13, 2005, letter was absolutely privileged. On September 20, 2006, the trial court granted defendant's motion to dismiss the libel claims. In response, plaintiff filed a motion to reconsider. On December 6, 2006, the trial court reversed its September 20, 2006, order, finding instead that the June 13, 2005, letter was not absolutely privileged. The libel claims were reinstated.

On January 11, 2007, defendants moved to reconsider the December 6, 2006, order. On February 1, 2008, the trial court denied the motion to reconsider, finding that '[a]bsolute privileges must be narrowly construed, and where an attorney has injected himself into litigation with which he has absolutely no connection, we do not find that *any* kind of absolute privilege exists' (emphasis in original), and that Krislov had no absolute duty under the Illinois Rules of Professional Conduct to report misconduct elsewhere.

On February 29, 2008, plaintiff filed a third amended complaint,[1] realleging the libel claim and claims for uncompensated vacation and bonus pay. On August 26, 2009,

---

[1]Plaintiff's second amended complaint is not relevant to this appeal.

defendants filed a motion to reconsider the trial court's February 1, 2008, order denying defendants' motion to reconsider the trial court's September 20, 2006, finding that the letter was not absolutely privileged. Defendants additionally filed a motion to dismiss the libel claim based on the Citizen Participation Act (Act). Defendants argued, for the first time, that they were immunized under the Act because the libel suit was filed in response to Krislov's exercise of his constitutional rights to free speech and participation in government.

On November 20, 2009, the trial court denied defendants' motion to reconsider its finding that the letter was not absolutely privileged where defendants relied on *Ficaro v. Funkhouser, Vegosen, Liebman & Dunn, Ltd.*, Nos. 1-07-1469, 1-07-3433 cons. (July 31, 2009) (unpublished order pursuant to Supreme Court Rule 23), to support the allegation that there had been a change in the law. The trial court held that defendants' reliance on an unpublished, nonprecedential order was improper. The trial court further held that the Act, which was enacted on August 28, 2007, could not provide immunity because it was not created until after plaintiff's June 13, 2005, letter and the filing of plaintiff's lawsuit on May 10, 2006, and the Act did not have retroactive application.

Defendants filed a notice of interlocutory appeal citing Supreme Court Rule 307(a) (188 Ill. 2d R. 307(a)) and section 20(a) of the Act (735 ILCS 110/20(a) (West Supp. 2007)) on December 17, 2009." *Id.* at 538-40.

As previously stated, in November 2010, we dismissed the interlocutory appeal for lack of jurisdiction.

¶ 7       In January 2011, defendants moved the trial court to reconsider its denial of their motion to dismiss under the Act, arguing that *Shoreline Towers Condominium Ass'n v. Gassman*, 404 Ill. App. 3d 1013, 1023 (2010), recently held that the Act had retroactive application. On March 16, 2011, the trial court granted defendants' motion and dismissed plaintiff's third amended complaint in its entirety. In July 2011, the trial court entered final judgment and awarded attorney fees and costs to defendants pursuant to the Act in the amount of $99,334.18.

¶ 8       In November 2011, the trial court entered a written order denying plaintiff's motion to reconsider the dismissal of his third amended complaint. For the first time, plaintiff argued that defendants' conduct was not immunized by the Act and that the court separately should have considered plaintiff's libel, wage, and contract claims. The trial court disagreed. Relying on *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113 (2010), the trial court found that plaintiff's wage and contract claims were "filed only in response to Defendants' motion to dismiss based on" the Act and that plaintiff failed to present clear and convincing evidence that the claims were not in response to or in retaliation for defendants' protected conduct.

¶ 9       Finally, in December 2011, the trial court granted defendants' supplemental petition for attorney fees, awarding defendants a total of $120,420.43 in fees and costs. This timely appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11        Plaintiff contends the trial court erred in dismissing his meritorious claims for libel, violations of the Wage Act, and breach of contract where the Illinois Supreme Court's recent decision in *Sandholm* established that the Act did not create a new immunity for defamation and that the Act applies only to meritless, retaliatory lawsuits, which is not the case here. *Sandholm* was decided on January 20, 2012, while this case was pending on appeal. Generally, a decision of our supreme court applies retroactively to causes pending at the time it is announced, including cases on direct review in the appellate court. *Miller v. Gupta*, 174 Ill. 2d 120, 128 (1996). According to plaintiff, application of *Sandholm* to this case demonstrates that the trial court erred in granting defendants' motion to dismiss under the Act. We agree.

¶ 12        A motion to dismiss based on immunity under the Act is properly raised under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)) wherein the legal sufficiency of the plaintiff's complaint is admitted, but the motion asserts certain defects or defenses outside of the pleadings defeat the claim. *Sandholm*, 2012 IL 111443, ¶ 55. When ruling on a section 2-619 motion, the court should construe the pleadings and supporting documents in a light most favorable to the nonmoving party, while accepting as true all well-pleaded facts in the complaint and drawing all reasonable inferences in the plaintiff's favor. *Id*. On appeal, the question for the court is "whether the existence of a genuine issue of material fact should have precluded dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." (Internal quotation marks omitted.) *Id*. We review *de novo* the dismissal of a complaint pursuant to section 2-619 of the Code. *Id*.


¶ 13                          A. The Citizen Participation Act

¶ 14        The Act was created as anti-SLAPP legislation. *Sandholm*, 2012 IL 111443, ¶ 33. SLAPPs are lawsuits " 'aimed at preventing citizens from exercising their political rights or punishing those who have done so.' " *Id*. (quoting *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 630 (2010)). "Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction." *Sandholm*, 2012 IL 111443, ¶ 34. "SLAPPs use the threat of money damages or the prospect of the cost of defending against the suits to silence citizen participation." *Wright Development Group, LLC*, 238 Ill. 2d at 630. "The purpose of the Act is to give relief, including monetary relief, to citizens who have been victimized by meritless, retaliatory SLAPP lawsuits because of their 'act or acts' made 'in furtherance of the constitutional rights to petition, speech, association, and participation in government.' " *Id*. at 633 (quoting 735 ILCS 110/15 (West 2008)).

¶ 15        Plaintiff's lawsuit may only be dismissed due to immunity under the Act if (1) the defendants' acts were in furtherance of their rights to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) plaintiff's claims were solely based on, related to, or in response to defendants' acts in furtherance of their rights of

petition, speech, association, or other participation in government; and (3) plaintiff failed to produce clear and convincing evidence that defendants' acts were not genuinely aimed at procuring favorable government action. 735 ILCS 110/15 (West 2008); *Sandholm*, 2012 IL 111443, ¶¶ 45, 52, 56. See also *Hammons v. Society of Permanent Cosmetic Professionals*, 2012 IL App (1st) 102644, ¶ 18. If plaintiff's claims genuinely sought relief for damages for the alleged libel, Wage Act violations and breach of contract by defendants, the claims are not solely based on defendants' rights of petition, speech, association, or participation in government (see *Sandholm*, 2012 IL 111443, ¶ 45), and accordingly, "it is irrelevant whether the defendants' actions were 'genuinely aimed at procuring favorable government action, result or outcome' " (*id*. ¶ 53 (quoting 735 ILCS 110/15 (West 2008))). The clear language of the Act establishes that it was not intended to protect those who commit tortious acts and then seek refuge in the immunity conferred by the Act. *Sandholm*, 2012 IL 111443, ¶ 45.

¶ 16     In reviewing whether dismissal was appropriate here, we must first determine whether defendants' actions were protected by the Act. More specifically, were Krislov's actions in furtherance of his constitutional right of speech, association, or participation in government to obtain favorable government action? The complained-of statements were made by Krislov in his June 13, 2005 letter[2] addressed to the Pennsylvania federal judge considering plaintiff's motion for class certification. Krislov's statements were made to a government official in an effort to obtain favorable government action by way of barring plaintiff from obtaining class certification based on inflated credentials. See 735 ILCS 110/10 (West 2008); see also *Hytel*, 405 Ill. App. 3d at 120; *Cartwright v. Cooney*, No. 10-CV-1691, 2012 WL 1021816 (N.D. Ill. Mar. 26, 2012). Accordingly, the first requirement to obtain immunity under the Act is met here. However, merely because defendants' activities were the kind that the Act is designed to protect does not necessarily mean that plaintiff's lawsuit is a SLAPP and is therefore subject to dismissal under the Act.

¶ 17     Next, we must determine whether plaintiff's claims were "solely based on" defendants' protected actions. "The party moving for dismissal under the Act bears the initial burden of proving that the claim was solely based on, related to or in response to acts in furtherance of the movant's rights of petition, speech and association." *Chicago Regional Council of Carpenters v. Jursich*, 2013 IL App (1st) 113279, ¶ 20. To satisfy this burden, defendants must affirmatively demonstrate that plaintiff's suit was retaliatory and meritless; if defendants meet this burden, then plaintiff must provide clear and convincing evidence that the defendants' activities were not immunized under the Act. *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 18; *Jursich*, 2013 IL App (1st) 113279, ¶ 20; *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 21.

¶ 18     Although the trial court dismissed plaintiff's libel and Wage Act/breach of contract claims as a group, we find it appropriate to discuss each claim separately. Turning first to plaintiff's libel claim, we must address whether the claim was retaliatory and meritless. In

---

[2]Plaintiff briefly mentions Krislov's June 24, 2005 response letter in his third amended complaint, but does not identify any statements from that letter as a basis for challenge.

determining whether plaintiff's libel claim was retaliatory, we note that although *Hytel* is a pre-*Sandholm* decision, it remains useful "for the question of whether a claim is retaliatory within the meaning of the Act." *Ryan*, 2012 IL App (1st) 120005, ¶ 23. Two nonexclusive factors to consider in determining whether a claim is retaliatory are (1) the proximity in time between the protected activity and the filing of the complaint, and (2) whether the damages requested are reasonably related to the facts alleged in the complaint and present a good-faith estimate of the injury sustained. *Id*. (citing *Hytel*, 405 Ill. App. 3d at 126).

¶ 19        In the instant case, plaintiff did not file his first amended complaint[3] until May 10, 2006, which was 11 months after Krislov sent his initial letter to the Pennsylvania federal judge. Moreover, in his libel claim, plaintiff requested compensatory and punitive damages in excess of $50,000, yet described his damages as those to his reputation and the costs associated with defending himself to the federal judge through responsive letters. Plaintiff did not suffer lost income and it is undisputed that the federal judge's class certification decision was not affected by Krislov's letter. To the extent plaintiff has pled a claim for libel *per se*, damage to his reputation is presumed. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 87 (1996). However, the requested $50,000 was not a "good-faith estimate" for the cost of responses to the federal judge. Based on the timing of the lawsuit, in that it was filed just before the expiration of the statute of limitations (735 ILCS 5/13-201 (West 2002)), and the relief requested, especially for punitive damages, it appears that plaintiff may have preserved his libel claim in an effort to make defendants "pay" for the letter to the federal judge despite minimal loss and speculative damages. Accordingly, defendants have shown some evidence of retaliatory intent for plaintiff's libel claim.

¶ 20        However, in determining whether a claim is subject to dismissal under the Act as one "solely based on" protected conduct, the *Sandholm* court further instructed that a SLAPP is also "by definition, meritless." *Sandholm*, 2012 IL 111443, ¶ 34. It was defendants' burden to "show that there are undisputed facts that demonstrate plaintiff's claim is meritless." *Ryan*, 2012 IL App (1st) 120005, ¶ 26. Keeping in mind that we review a motion to dismiss under the Act pursuant to section 2-619 of the Code, we must presume the legal sufficiency of plaintiff's libel claim. *Ryan*, 2012 IL App (1st) 120005, ¶ 22. A claim is meritless if the moving party disproves some essential element of the nonmovant's claim. *Garrido*, 2013 IL App (1st) 120466, ¶ 19. Therefore, we may consider whether plaintiff has alleged sufficient facts to show the claim was genuine and not factually baseless. *Sandholm*, 2012 IL 111443, ¶ 45; *Garrido*, 2013 IL App (1st) 120466, ¶ 23.

¶ 21        Plaintiff's third amended complaint alleged that Krislov's June 13, 2005 letter "knowingly and intentionally made false representations to the court regarding Plaintiff's firm['s] resume that Plaintiff had filed in support of the motion for class certification." Plaintiff added that he drafted a response letter with an attached summary and appendix of supporting documents demonstrating Krislov's statements were untrue. According to the third amended complaint, defendants sent a response letter on July 14, 2005. In the

---

[3]The parties refer to the first amended complaint as the initial complaint.

-7-

complaint, plaintiff listed five false statements (*i.e.*, that his previous case accomplishments were beyond puffing and that he misrepresented and misstated his accomplishments) and alleged that Krislov's statements would impugn his integrity and affect his ability to be found qualified to represent a class in other class action cases. Taking all well-pled facts as true, drawing reasonable inferences in favor of plaintiff, and viewing the pleading in a light most favorable to plaintiff, we conclude that plaintiff's libel claim was not meritless where defendants failed to satisfy their burden of demonstrating the truth of the contents of Krislov's letters. See *Ryan*, 2012 IL App (1st) 120005, ¶¶ 27-29. Defendants have not offered any evidence, either in their appellate brief or at oral argument, that plaintiff's claim lacked merit. We, therefore, conclude that plaintiff's libel claim does not qualify as a SLAPP. As a result, the trial court erred in dismissing the claim.

¶ 22     We next address whether plaintiff's Wage Act and breach of contract claims were "solely based" on protected conduct. Turning our attention to whether those claims were retaliatory, the two nonexclusive factors provided in *Hytel* are "(1) the proximity in time between the protected activity and the filing of the complaint, and (2) whether the damages requested are reasonably related to the facts alleged in the complaint and present a good faith estimate of the injury sustained." *Ryan*, 2012 IL App (1st) 120005, ¶ 23 (citing *Hytel*, 405 Ill. App. 3d at 126).

¶ 23     Plaintiff left his employment at defendant law firm in 2001; however, he did not file a complaint until May 10, 2006. Based on the lengthy gap in time from having allegedly not received his vacation and bonus pay prior to leaving defendant firm and the relatively short span of time between Krislov's letter and the filing of the complaint, plaintiff's claims appear retaliatory. In terms of the damages requested, plaintiff requested a total of $65,007.66 in damages for the Wage Act and breach of contract claims with $21,807.66 for vacation pay and $43,200 for 2001 bonus pay. Under the Wage Act claims, plaintiff additionally requested prejudgment interest. Plaintiff alleged he was owed 42 days of vacation pay and, based on previous bonuses, a 20% increase from the prior year's bonus. Although the damages requested appear reasonably related to the facts alleged in the complaint, defendants have shown evidence of retaliatory intent where plaintiff sat on his claims for nearly six years and only filed a complaint after Krislov interfered in the federal lawsuit.

¶ 24     As advised in *Sandholm*, we must also determine whether plaintiff's claims for violation of the Wage Act and breach of his employment contract were meritless. In his claims related to vacation and bonus pay, plaintiff alleged he was entitled to additional compensation. In regard to his vacation pay, plaintiff alleged that when he was hired as an attorney at defendant law firm in 1994 he was informed of the compensation package, which included paid vacation. Plaintiff alleged that the vacation policy was not written, but was provided orally by the office manager. When hired, plaintiff was informed that he would earn two weeks of vacation pay during his first four years of service and three weeks of vacation pay thereafter. According to plaintiff's third amended complaint, he signed a nonequity partner employment agreement in 2000. That agreement was silent to the vacation policy where it stated that "Plaintiff was entitled to paid vacations and holidays in accordance with the firm's customary employment policies." Plaintiff alleged that he exceeded the three-week vacation

allotment in 2000, but was allowed to use previously accrued vacation time. According to plaintiff, there was no notice of a policy change during his employment. In regard to his bonus pay, plaintiff alleged that defendant law firm customarily paid bonuses to its attorneys on the last working day before Christmas each year. However, at a meeting in October 2001, Krislov informed the attorneys that bonuses might be deferred beyond year-end. In late December 2001, Krislov confirmed that the bonuses were going to be deferred until defendant law firm received fees from a client. In response, plaintiff informed Krislov that he was resigning because the bonus pay deferment was "unacceptable."

¶ 25   Defendants have not produced undisputed facts demonstrating that plaintiff's Wage Act and breach of contract claims were meritless. *Ryan*, 2012 IL App (1st) 120005, ¶ 26. Indeed, as with the libel claim, defendants failed to produce any evidence to challenge plaintiff's claims. *Id*. ¶¶ 27-29. We, therefore, conclude that plaintiff's Wage Act and breach of contract claims do not qualify as SLAPPs. As a result, the trial court erred in dismissing plaintiff's third amended complaint.

¶ 26   Due to our finding, we also conclude that the trial court erred in awarding defendants attorney fees under the Act.

¶ 27                                B. Absolute Privilege

¶ 28   Defendants argue that Krislov's letters were absolutely privileged as either statements made in a judicial proceeding or as statements made in the discharge of a duty under the express authority of law. Although the trial court did not rely on either privilege as the basis for dismissing plaintiff's third amended complaint, defendants argue that this court can affirm the trial court's dismissal on any basis present in the record.

¶ 29                    1. Absolute Privilege in Judicial Proceedings

¶ 30   First, defendants argue that "Illinois law affords an absolute privilege to any person who reports, to a judicial or quasi-judicial body, information that is pertinent to a matter, or potential matter, under consideration by the judicial body." Defendants assert that the absolute privilege applies even if the maker of the statement was not a party to the litigation or an attorney of record because recognizing an absolute privilege for such statements furthers Illinois public policy. Specifically, defendants contend public policy is served by encouraging a freeflow of honest information to a judicial or quasi-judicial body where persons with knowledge of relevant facts can report to the court or other tribunals without the fear of civil liability.

¶ 31   As explained by Illinois courts:

"The defense of privilege rests upon the idea 'that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of

uncompensated harm to the plaintiff's reputation.' [Citation.] If the policy interest is of 'paramount importance, considerations of policy may require that the defendant's immunity for false statements be absolute, without regard to his purpose or motive, or the reasonableness of his conduct.' [Citations.] 'If it has relatively less weight from a social point of view, the immunity may be qualified, and conditioned on good motives and reasonable behavior.' [Citation.]" *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164-65 (2003).

Defendants do not argue on appeal that Krislov's letters are protected by a qualified immunity.

¶ 32       Whether an otherwise actionable defamatory statement is protected by absolute privilege is a question of law. *Joseph v. Collis*, 272 Ill. App. 3d 200, 210 (1995). "In determining the scope of absolute privilege, Illinois courts have relied upon the Restatement (Second) of Torts (1977)." *Bushell v. Caterpillar, Inc.*, 291 Ill. App. 3d 559, 561 (1997).

¶ 33       One type of recognized absolute privilege in Illinois is the attorney litigation privilege as provided in section 586 of the Restatement (Second) of Torts. *August v. Hanlon*, 2012 IL App (2d) 111252, ¶ 35. The provision reads:

"An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding *in which he participates as counsel*, if it has some relation to the proceeding." (Emphasis added.) Restatement (Second) of Torts § 586 (1977).

The policy supporting this absolute privilege is that "of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice *for their clients*." (Emphasis added.) Restatement (Second) of Torts § 586 cmt. a (1977).

¶ 34       Due to the complete immunity provided by the absolute privilege, the scope of absolutely privileged communication is necessarily narrow. *Edelman, Combs & Latturner*, 338 Ill. App. 3d at 165. Courts have extended the attorney litigation privilege to out-of-court communications between opposing attorneys, out-of-court communications between attorneys and clients related to pending litigation, out-of-court communications between attorneys representing different parties who are suing the same entities, statements made during quasi-judicial proceedings, communications necessarily preliminary to quasi-judicial proceedings, and posttrial remarks related to judicial proceedings made by an attorney to his client. *August*, 2012 IL App (2d) 111252, ¶ 36 (citing *Golden v. Mullen*, 295 Ill. App. 3d 865, 870-71 (1997) (and cases cited therein)). Illinois courts, however, have never extended the privilege to other persons having no connection to the lawsuit. *Edelman, Combs & Latturner*, 338 Ill. App. 3d at 166. In fact, Illinois courts have expressly rejected extending the privilege to third parties lacking a connection to the litigation. *August*, 2012 IL App (2d) 111252, ¶ 37; see *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 705 (2000) (refusing to extend the privilege to statements made by an attorney to a reporter in connection with a case); *Thompson v. Frank*, 313 Ill. App. 3d 661, 664 (2000) (refusing to extend the privilege to out-of-court

communications between an attorney and an opposing party's spouse); *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 166 (1998) (finding that statements made to the media regarding a case are not privileged because they are not part of the judicial proceeding); *Golden*, 295 Ill. App. 3d at 872 (refusing to extend the privilege to an out-of-court communication between an attorney and a former client's spouse).

¶ 35    "[C]ourts have required that the act to which the privilege applies must not only bear some relation to the judicial proceeding but must also be 'in furtherance of that representation.' " *Kurczaba*, 318 Ill. App. 3d at 706 (quoting *Samson Investment Co. v. Chevaillier*, 1999 OK 90, ¶ 9, 988 P.2d 327). Noting the policy reasons for the privilege were to protect zealous advocacy, courts have found that the privilege is not applicable under circumstances for which there are no safeguards against abuse of the privilege, *i.e.*, where the authorities do not have the ability to discipline the attorney and strike from the record any statements exceeding the bounds of permissible conduct. *Id*.

¶ 36    We conclude that the attorney litigation privilege does not apply to this case. In the facts before us, defendant was essentially acting as a third party with no connection to the federal litigation. Through his letters to the federal judge, defendant was not attempting to secure justice for *his* client in a proceeding in which *he participated as counsel*, as described in the Restatement. Restatement (Second) of Torts § 586 cmt. a (1977); see also *Edelman, Combs & Latturner*, 338 Ill. App. 3d at 165 (the defendant counsel's delivery of a memorandum to a bankruptcy trustee regarding the plaintiff counsel's misconduct was absolutely privileged where defendant counsel represented a creditor in the bankruptcy case and, thus, sent the memo in furtherance of that client's interest in increasing the chance that the bankruptcy proceeding would be reopened).

¶ 37    Illinois also recognizes an absolute privilege for words used by a party in judicial proceedings as provided in section 587 of the Restatement (Second) of Torts. *Bushell*, 291 Ill. App. 3d at 561. The provision reads:

    "*A party to a private litigation* *** is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding *in which he participates*, if the matter has some relation to the proceeding." (Emphases added.) Restatement (Second) of Torts § 587 (1977).

This privilege "is based upon the public interest in according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes." Restatement (Second) of Torts § 587 cmt. a (1977). Clearly, this privilege is inapplicable to the instant case because defendants were not parties in the Pennsylvania case.

¶ 38    In addition, Illinois recognizes an absolute privilege for a witness in a judicial proceeding for testimony pertinent and material to the subject of inquiry, as provided in section 588 of the Restatement (Second) of Torts. *Bushell*, 291 Ill. App. 3d at 562. The provision reads:

    "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial

proceeding *in which he is testifying*, if it has some relation to the proceeding." (Emphasis added.) Restatement (Second) of Torts § 588 (1977).

This rule "protects a *witness while testifying*." (Emphasis added.) Restatement (Second) of Torts § 588 cmt. b (1977). Because a court's final judgment must be based upon the facts as shown by the witness's testimony and the court can compel the witness's attendance, this privilege is necessary so that a full disclosure will not be hampered by the witness's fear of private suits for defamation. Restatement (Second) of Torts § 588 cmt. a (1977). Moreover, the "witness is subject to the control of the trial judge in the exercise of the privilege," and may, "for abuse of it, *** be subject to criminal prosecution for perjury and to punishment for contempt." *Id*.

¶ 39    We find that this privilege does not apply to defendants, who did not testify as witnesses in the Pennsylvania case and were not subject to the control of the Pennsylvania trial judge. To the contrary, defendant Krislov merely sent an unsigned *ex parte* letter to the trial judge. Accordingly, defendants cannot take advantage of this absolute privilege because Krislov's letter was not made "in office[, *i.e.*, in the character of a witness, litigant or counsel either] in the performance of the public duty or in the exercise of the private right upon which the immunity is based." (Internal quotation marks omitted.) *Laun v. Union Electric Co. of Missouri*, 166 S.W.2d 1065, 1071 (Mo. 1942) (rejecting the assertion of absolute privilege by defendant corporations, which were not parties to the underlying litigation but owned and controlled the power companies that were parties to the underlying litigation, where the defendant corporations were sued for libel for allegedly causing the power companies to incorporate libelous statements into their pleadings). Because the absolute privilege must be construed narrowly and Illinois courts have not extended the privilege to uninterested third parties in judicial proceedings, we find the privilege should not be extended here.

¶ 40    The cases cited by defendants are distinguishable from the case at bar. In *Lykowski*, this court concluded that the defendant's statement to the Attorney Registration and Disciplinary Commission (ARDC) regarding the plaintiff's alleged attorney misconduct was absolutely privileged as a communication made to a quasi-judicial body during a preliminary and necessary step in maintaining authority. *Lykowski*, 299 Ill. App. 3d at 165. In *Parillo, Weiss, & Moss v. Cashion*, 181 Ill. App. 3d 920 (1989), this court concluded that the defendant's statements made in a letter written to the director of this state's Department of Insurance were absolutely privileged as a preliminary step toward a quasi-judicial proceeding where the letter was designed to prompt the regulatory agency to investigate the contents thereof. *Id*. at 928-29. In *Kalish v. Illinois Education Ass'n*, 157 Ill. App. 3d 969 (1987), this court concluded that the defendant's statements made to the character and fitness committee were absolutely privileged as statements made to a quasi-judicial body whose function was to investigate the moral character and fitness of attorney applicants. *Id*. at 975-76.

¶ 41    The cases relied upon by defendants involved regulatory bodies that were charged with the duty of investigating reports of improper activities and enforcing the rules of the particular agency. In those cases, the absolute privilege was applied because public policy encourages free communication of relevant information from the public to the agencies in

order to ensure compliance with the rules of those agencies. In the case before us, however, the Restatement and cases interpreting the Restatement expressly restrict the absolute privilege for attorneys, parties and witnesses in judicial proceedings to those instances where (1) the attorney is involved in the judicial proceeding and is advocating for his client; (2) the person is a party to the judicial proceeding and is seeking access to the court to settle a private dispute; and (3) the witness is testifying in the judicial proceeding and is subject to prosecution for perjury and punishment for contempt for the abuse of the privilege. Therefore, we conclude that the absolute privilege granted under certain circumstances to attorneys, parties and witnesses in judicial proceedings did not protect Krislov's unsigned *ex parte* letter to the Pennsylvania trial judge from potential liability.

¶ 42                    2. Discharge of a Duty Under Express Authority of Law

¶ 43    Finally, we have reviewed whether Krislov's statements were made in the discharge of a duty under the express authority of law, and conclude that he had no duty to report plaintiff's alleged misconduct to the federal Pennsylvania judge. As a result, Krislov's statements were not privileged as a discharge of a duty under the express authority of law.

¶ 44    The version of Rule 8.3(a) of the Illinois Rules of Professional Conduct (Ill. R. Prof. Conduct R. 8.3(a) (eff. Aug. 1, 1990))[4] applicable at the relevant time required that an attorney report the misconduct of another attorney to "a tribunal or other authority empowered to investigate or act upon such violation," including criminal acts reflecting on his trustworthiness, honesty, or fitness as an attorney and conduct involving fraud, dishonesty, deceit, or misrepresentation. Section 592A of the Restatement (Second) of Torts (1977) provides immunity for compliance with Rule 8.3(a), such that "one who is required by law to publish defamatory matter is absolutely privileged to publish it." Restatement (Second) of Torts § 592A (1977); see *Weber v. Cueto*, 209 Ill. App. 3d 936, 942 (1991).

¶ 45    In *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214 (2000), the Illinois Supreme Court clarified that the relevant language of Rule 8.3(a) obligated an Illinois attorney to report known attorney misconduct to the ARDC. *Id*. at 229. Relying on the language of the rule, the supreme court found that, due to the delegation of the supreme court's singular authority "to investigate or act upon" a report of attorney misconduct to the ARDC, an attorney's duty to report was discharged only by contacting the ARDC with information regarding the alleged misconduct. *Id*.

¶ 46    Defendants argue that, because the Pennsylvania federal judge was "empowered to investigate or act" as provided under the applicable version of Rule 8.3(a), Krislov's June 13, 2005 letter satisfied his obligation to report alleged misconduct under the rule and was, therefore, privileged. Defendants' reasoning is flawed in that, unlike former Rule 8.3(a), the local Pennsylvania rule cited by defendants did not *require* Krislov to report plaintiff's

---

[4]On January 1, 2010, Rule 8.3(a) was amended to require a report to the "appropriate professional authority."

alleged misconduct. Rather, the local Pennsylvania rule merely stated that a judge who became aware of potentially sanctionable attorney misconduct must "refer the matter to the Chief Judge who shall issue an order to show cause." In particular, defendants cited E.D. Penn. Local R. 83.6, R. V (eff. July 1, 1995), which states:

> "When the misconduct or other basis for action against an attorney *** or allegations of same which, if substantiated, would warrant discipline or other action against an attorney admitted to practice before this court shall come to the attention of a Judge of this court *** the judge shall refer the matter to the Chief Judge who shall issue an order to show cause."

¶ 47    The rule does not speak to the requisite actions an attorney need take after learning of alleged attorney misconduct. In contrast, *Skolnick* did speak to an Illinois attorney's obligation under Rule 8.3(a), in that an attorney's duty is discharged only by reporting alleged attorney misconduct to the ARDC. *Skolnick*, 191 Ill. 2d at 229. As a result, we cannot say that Krislov's statements in his June 13, 2005 letter were made in the discharge of a duty under the express authority of law. *Cf. Weber*, 209 Ill. App. 3d at 942-48; *Busch v. Bates*, 323 Ill. App. 3d 823, 833-34 (2001) (absolute privilege extended to statements made pursuant to mandatory duty to report conduct violations in order to avoid the plaintiffs' own discipline for failure to report). Therefore, the statements were not protected by an absolute privilege. See Restatement (Second) of Torts § 592A (1977) ("one who is required by law to publish defamatory matter is absolutely privileged to publish it").

¶ 48                                              III. CONCLUSION

¶ 49    Based on the foregoing, we reverse the trial court's March 2011 order dismissing plaintiff's third amended complaint and its November 2011 order denying plaintiff's motion to reconsider the March 2011 order. We further reverse the trial court's July 2011 and December 2011 orders granting attorney fees to defendants pursuant to the Act. We remand this cause for further proceedings.

¶ 50    Reversed and remanded.