FOURTH DIVISION

Filed: 12/04/02

1-01-4001

THE PEOPLE OF THE STATE OF ILLINOIS 
ex
 
rel
. )  Appeal from the

Richard A. Devine, State's Attorney of Cook County, Illinois, )  Circuit Court of

)  Cook County

Plaintiff-Appellant, )

)

v. )  

)

TIME CONSUMER MARKETING, INC., )  Honorable

)  Julia Nowicki

Defendant-Appellee, )  Judge Presiding.

JUSTICE HOFFMAN delivered the opinion of the court:

Section 7 of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) provides that either the Illinois Attorney General or a State's Attorney "may bring an action in the name of the People of the State" when he or she "has reason to believe that any person is using, has used, or is about to use any method, act or practice" declared unlawful under the act.  815 ILCS 505/7 (West 2000).  The State's Attorney of Cook County initiated the instant case by filing a two-count complaint on behalf of the People of the State of Illinois alleging that the defendant, Time Consumer Marketing, Inc. (Time), violated the Consumer Fraud Act with regard to certain sweepstakes mailings it sent to members of the public in Cook County.  A short time later, the Illinois Attorney General and Time executed an "Assurance of Voluntary Compliance or Discontinuance" with regard to Time's future sweepstakes mailing practices as part of which Time was released from all claims which were or could have been asserted pursuant to the Consumer Fraud Act prior to the effective date of the assurance.  Subsequently, the trial court granted Time's motion to dismiss the instant action pursuant to section 2-619(a)(6) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(6) (West 2000)), finding that the claims asserted herein had been released.  We affirm.

On June 27, 2000, the State's Attorney of Cook County filed a two count complaint alleging that Time violated the Consumer Fraud Act by sending direct mail solicitations which contained an offer to participate in a sweepstakes contest (hereinafter referred to as the sweepstakes mailing) to members of the public in Cook County.  Count I of the complaint alleged that Time violated section 2 of the Consumer Fraud Act (815 ILCS 505/2 (West 2000)) in that the sweepstakes mailing misrepresented that: 1) persons had already won a prize; 2) persons were likely to win a prize; 3) persons would improve their chances of winning a prize by ordering merchandise from Time; 4) persons would improve their chances of winning a prize by submitting a sweepstakes entry accompanied by an order for merchandise; and 5) persons must submit their entries within 5 or 10 days after the arrival of the sweepstakes mailing to be eligible to participate in the sweepstakes contest.  Count II of the complaint alleged that Time violated section 2P of the Consumer Fraud Act (815 ILCS 505/2P (West 2000)) in that it failed to disclose the following material terms in a clear and conspicuous manner at the outset of the sweepstakes mailing: 1) estimated odds of winning the grand prize; 2) estimated odds of winning any extra and/or special prizes; 3) a requirement that a prize winner must sign and return an "Affidavit of Eligibility and Release of Liability & Publicity" to receive any prize; and 4) a requirement that entry into the sweepstakes and/or acceptance of a prize constitutes a grant of permission by the winner for Time to use his or her name, hometown, likeness, and prize won for purposes of advertising and promotion.  By way of relief, the complaint requested  a finding that Time violated the Consumer Fraud Act and orders: temporarily restraining and preliminarily and permanently enjoining Time from committing any further violations of the Consumer Fraud Act, including but not limited to the specific acts alleged in the complaint; requiring Time to pay restitution to all members of the public damaged by its violations of the Consumer Fraud Act; and assessing a $50,000 civil penalty against Time pursuant to section 7(b) of the Consumer Fraud Act (815 ILCS 505/7(b) (West 2000)).  Time was served with the complaint in the instant case on July 10, 2000, and filed its appearance on August 2, 2000.  

At the time the State's Attorney of Cook County initiated the instant action, the Illinois Attorney General was participating in a multi-jurisdiction investigation of Time's sweepstakes mailing practices.  As a result of that investigation, in August 2000, the attorneys general of 48 states, including Illinois, and the corporation counsel of the District of Columbia entered into an "Assurance of Voluntary Compliance or Discontinuance" (Assurance) with Time Inc. and its wholly owned subsidiaries, including Time.  The Assurance provided that it would be effective August 22, 2000. Pursuant to the terms of the Assurance, Time agreed to comply with numerous requirements for its future sweepstakes mailings and to pay the sum of $4,924,636, within 30 days of the effective date of the Assurance, to establish a consumer fund, out of which payments would be made to consumers as directed by the participating states.  The Assurance further required that Time pay the sum of $3,240,000, within 30 days after its effective date, "for the purpose of providing to the individual States reimbursement for their attorneys' fees and other costs of the inquiry leading to" the Assurance.   In exchange for the monetary payments and agreement to follow the enumerated requirements with regard to future mailings, Time received a release of all claims which had been or could have been brought pursuant to the consumer protection statutes of the signatory states prior to the effective date of the Assurance based on the subject matter of the Assurance.  Charles G. Fergus, Chief of the Consumer Fraud Bureau of the Illinois Attorney General's Office, signed the Assurance on behalf of the Illinois Attorney General.

On January 16, 2001, Time filed a motion to dismiss the instant action pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2000)).  Time argued that the complaint should be dismissed pursuant to section 2-619(a)(6) of the Code (735 ILCS 5/2-619(a)(6) (West 2000)) because, under the terms of the Assurance, the People of the State of Illinois had released it from the claims asserted therein.  Time also argued that the complaint should be dismissed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2000)) because it fails to state a cause of action for a violation of the Consumer Fraud Act.  In  response, the State's Attorney of Cook County asserted that the release contained in the Assurance does not apply to the claims stated in the instant action because he was not a party to the release and the Illinois Attorney General was not authorized to release the claims he filed on behalf of the People of the State of Illinois.

After hearing arguments, the trial court found that the claims asserted in the instant action had been released by virtue of the Assurance and dismissed the complaint pursuant to section 2-619(a)(6).  This appeal followed.

Section 2-619 of the Code is designed to provide a means for the disposition of issues of law and easily proved issues of fact.  
Zedella v. Gibson
, 165 Ill. 2d 181, 185, 650 N.E.2d 1000 (1995). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but raises some affirmative matter, appearing on the face of the complaint or established by external submissions, which defeats the plaintiff's claim.  
LaSalle National Bank v. City Suites, Inc.
, 325 Ill. App. 3d 780, 789, 758 N.E.2d 382 (2001).  Section 2-619(a)(6), pursuant to which the trial court dismissed the complaint in this case, provides for the dismissal of an action which states a claim that has been released, satisfied of record, or discharged in bankruptcy.  735 ILCS 5/2-619(a)(6) (West 2000).  On review of an order granting dismissal pursuant to section 2-619, we must determine whether a genuine issue of material fact existed which should have precluded dismissal and, if not, whether the dismissal was proper as a matter of law.  
Kedzie & 103
rd
 Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732 (1993).  Our review is 
de
 
novo
.  
Kedzie & 103
rd
 Currency Exchange, Inc.
, 156 Ill. 2d at 116.

In his brief to this court, the State's Attorney of Cook County first argues that, by its plain language, the release contained in the Assurance does not encompass the claims asserted in the instant action.   At oral argument, however, he abandoned this argument and acknowledged that the release does purport to apply to the relevant claims.  An examination of the plain language of the release provision reveals that any assertion to the contrary lacks merit.  See 
Doctor's Associates, Inc. v. Duree
, 319 Ill. App. 3d 1032, 1045, 745 N.E.2d 1270 (2001)(a release is a contract subject to traditional rules of contract interpretation); 
Bunge Corp. v. Northern Trust Co.
, 252 Ill. App. 3d 485, 493, 623 N.E.2d 785 (1993) (in construing contract, primary objective is to determine parties' intention which, absent ambiguity, is determined from language of the contract itself).  The release provision contained in the Assurance provides that:

"Each State acknowledges by its execution hereof that this Assurance constitutes a complete settlement and release of all claims on behalf of such State against Time, and all of its subsidiaries and affiliates, past and present, *** (all such released parties shall be collectively referred to as the "Releasees"), with respect to all claims, causes of action, damages, fines, costs and penalties which were asserted or could have been asserted prior to the Effective Date of this Assurance under the above-cited consumer protection statutes and relating to or based upon the subject matter of this Assurance."

The claims asserted in the instant case clearly allege violations of the Consumer Fraud Act based on conduct which is the subject matter of the Assurance, namely Time's sweepstakes mailing practices, and were brought prior to the effective date of the Assurance.  Thus, as the State's Attorney of Cook County conceded at oral argument, the  release provision in the Assurance does encompass the claims asserted in the instant case.

Having concluded that the release provision contained in the Assurance does purportedly apply to the claims stated in this case, we now turn to the State's Attorney of Cook County's contention that the release cannot be enforced with regard to the claims at issue because the Illinois Attorney General does not have the authority to release a claim  initiated by a State's Attorney on behalf of the People of the State of Illinois pursuant to the Consumer Fraud Act.  The State's Attorney of Cook County contends that neither the Attorney General  Act (15 ILCS 205/.01 
et
 
seq
. (West 2000)), which sets forth the Illinois Attorney General's statutory duties generally, nor the Consumer Fraud Act, which sets forth the Illinois Attorney General's powers and duties with respect to actions thereunder, authorizes him or her to settle a claim filed by a State's Attorney.  Time responds that, pursuant to section 6.1 of the Consumer Fraud Act (815 ILCS 505/6.1 (West 2000)) and his common law powers, the Illinois Attorney General did have the authority to release Time from liability for all claims under the Consumer Fraud Act based on its past conduct, including any claim filed by a State's Attorney.

In order to resolve the issue before us, we must consider the constitutional and statutory provisions which set forth the powers and duties of the Illinois Attorney General.

Section 15 of article V of the Illinois Constitution of 1970 provides that "[t]he Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law."  Ill. Const. 1970, art. V, §15.  Our supreme court has interpreted this provision to mean that the Illinois Attorney General is vested with those powers and duties associated with the office of attorney general at common law as well as with whatever additional powers and duties for which the legislature provides.  
People ex rel. Scott v. Briceland
, 65 Ill. 2d 485, 500-01, 359 N.E.2d 149 (1976); 
Environmental Protection Agency v. Pollution Control Board
, 69 Ill. 2d 394, 398, 372 N.E.2d 50 (1977); 
Fergus v. Russel
, 270 Ill. 304, 339-42, 110 N.E. 130 (1915).  Limiting our consideration for the moment to statutory duties, we look to section 4 of the Attorney General Act (15 ILCS 205/4 (West 2000)).  Pursuant thereto, the Illinois Attorney General's statutorily prescribed duties include, 
inter
 
alia
, the duties to: appear and represent the people of the state before the supreme court; to institute and prosecute all proceedings in favor of the state which may be necessary in the execution of the duties of a state officer; to defend actions against a state officer in that officer's official capacity; to consult with and advise the state's attorneys and, when necessary in his or her judgment, to attend a criminal trial and assist in the prosecution; and to investigate alleged violations of the statutes which he or she has a duty to enforce.  15 ILCS 205/4 (West 2000).  Thus, section 4 of the Attorney General Act neither expressly allows the Illinois Attorney General to release a civil claim filed by a State's Attorney on behalf of the People of the State of Illinois nor expressly prohibits him from doing so.  We next look to the relevant provisions of the Consumer Fraud Act itself.  

Prior to 1986, section 7 of the Consumer Fraud Act provided that the Illinois Attorney General could bring a claim under the Consumer Fraud Act in the name of the People of the State.  Ill. Rev. Stat. 1984, ch. 121.5, par. 267.  Effective January 1, 1986, however, section 7 was amended to provide that either the "Attorney General or a State's Attorney" may bring such an action.  815 ILCS 505/7 (West 2000).  Relying on  
People v. Buffalo Grove Confectionery Co.
, 78 Ill. 2d 447, 401 N.E.2d 546  (1980), and 
People v. Flynn
, 375 Ill. 366, 31 N.E.2d 591 (1940), the State's Attorney of Cook County asserts that, as the Illinois Attorney General and the State's Attorneys share concurrent authority to bring a claim under the Consumer Fraud Act, the Illinois Attorney General cannot take control of an action filed by a State's Attorney by releasing the claims stated therein.  We find the reliance on 
Buffalo Grove Confectionery Co.
 and 
Flynn
 to be misplaced as those cases dealt only with the limited issue of the scope of the Illinois Attorney General's statutory power to assist a State's Attorney in the prosecution of a criminal case when he deems it necessary (see 15 ILCS 205/4 (West 2000)).

The State's Attorney of Cook County further asserts that the Illinois Attorney General does not have the authority to release a claim brought by a State's Attorney because the Consumer Fraud Act vests the two officials with co-extensive authority and does not explicitly authorize the Illinois Attorney General to exercise any control over a claim initiated by a State's Attorney.  Although we acknowledge that section 7 of the Consumer Fraud Act authorizes either the Illinois Attorney General or any State's Attorney to bring an action on behalf of the People of the State of Illinois for a violation of the act, we reject the State's Attorney of Cook County's broad assertion that he shares co-extensive authority with the Illinois Attorney General pursuant to the Consumer Fraud Act.  A review of the Consumer Fraud Act reveals that certain powers thereunder are granted exclusively to the Illinois Attorney General.  See  815 ILCS 505/3 (West 2000); 815 ILCS 505/6.1 (West 2000).  Most significantly, as Time notes, section 6.1 of the Consumer Fraud Act grants the Illinois Attorney General the exclusive authority to "accept an Assurance of Voluntary Compliance with respect to any method, act or practice deemed to be violative of the Act from any person who has engaged in, is engaging in, or was about to engage in such method, act or practice."  815 ILCS 5/6.1 (West 2000).  Time asserts that no party would agree to give the Illinois Attorney General an assurance of voluntary compliance with the Consumer Fraud Act without receiving a release from liability for past violations thereof.  Therefore, it contends, the authority to issue a release from liability for past conduct is implicit within the Illinois Attorney General's explicit authority to accept an assurance of voluntary compliance.  The State's Attorney of Cook County asserts that the Illinois Attorney General is not authorized to issue a release in exchange for an assurance of voluntary compliance because section 6.1 of the Consumer Fraud Act does not explicitly state so.  He further contends that, even if we were to interpret section 6.1 as authorizing the Illinois Attorney General to issue a release, this would still not authorize him or her to release a pending claim filed by a State's Attorney.  We disagree with both of these contentions.

Illinois courts have stated that, although the powers of an official whose office is created by statute are limited to those powers conferred by statute, a legislative grant of authority carries with it, by implication, the powers necessary to exercise those powers expressly stated.  
County of Will v. Woodhill Enterprises, Inc.
, 4 Ill. App. 3d 68, 74, 274 N.E.2d 476 (1971); 
Citizens Federation of St. Clair County, Inc. v. Brown
, 134 Ill. App. 3d 1054, 1057-58, 481 N.E.2d 879 (1985).  Although the office of Illinois Attorney General is created by our constitution, rather than by statute, we hold that this rule applies with equal force as to the powers granted to that official by our legislature.  We agree with Time that, in order to effectively execute the power to accept an assurance of voluntary compliance pursuant to section 6.1 of the Consumer Fraud Act, the Illinois Attorney General must have the power to grant the party from whom it seeks to obtain such an assurance a release from liability for past violations of the Consumer Fraud Act, including claims filed by a State's Attorney. We also find merit to Time's argument that the Illinois Attorney General had the authority to issue the release contained in the Assurance pursuant to his common law powers.  As stated above, our supreme court has interpreted section 15 of article V of the Illinois Constitution as vesting the Illinois Attorney General with all of the powers and duties associated with the office of attorney general at common law.    
Briceland
, 65 Ill. 2d at 500-01; 
Fergus
, 270 Ill. at 339.  Our supreme court has gone so far as to hold that the legislature cannot strip the Illinois Attorney General of these common law powers.   
Fergus
, 270 Ill. at 339.   It seems that no court has undertaken to define the full scope of duties or powers  associated with the office of attorney general at common law.  See 
Fergus
, 270 Ill. at 336 ("It is not necessary, and indeed it would be difficult, to enumerate all the powers vested in the Attorney General at common law and all the duties which were imposed upon him to perform.") In 
Fergus
, however, the court observed that, although there were other representatives of the crown at common law, they were all subordinate to the attorney general and that the Illinois Attorney General is "the chief legal officer of the state".  
Fergus
, 270 Ill. at 342.  Further, in 
People v. Massarella
, 72 Ill. 2d 531, 534, 382 N.E.2d 262 (1978), our supreme court noted that "the common law gave to [the] Attorney General the competence to control all litigation on behalf of the State including intervention in and management of all such proceedings."  On yet another occasion, our supreme court stated that the common law powers of the office of attorney general are " 'as broad as the 'protection and defense of the property and revenue of the state,' and, indeed, the public interest requires.' " 
People ex rel. Hartigan v. E & E Hauling, Inc.
, 153 Ill. 2d 473, 483, 607 N.E.2d 165 (1992), quoting 
State of Florida ex rel. Shevin v. Exxon Corp.
, 526 F.2d 266, 271 (5
th
 Cir. 1976).  As such, we conclude that the Illinois Attorney General, as the chief legal officer of Illinois, had the authority to issue the release contained in the Assurance, thereby releasing Time from liability for all claims which were or could have been brought pursuant to the Consumer Fraud Act based upon its conduct prior to the effective date of the Assurance, including the claims asserted in the instant action.  Accordingly, we find that the trial court properly dismissed the complaint in the instant action pursuant to section 2-619(a)(6) of the Code.

Affirmed.

SOUTH, P.J., and WOLFSON, J., concur.