2020 IL App (1st) 191819

No. 1-19-1819

Opinion filed September 30, 2020

Modified upon denial of rehearing December 3, 2020

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JAI PRAKASH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 L 8559 |
| | ) | |
| SATISH PARULEKAR, | ) | Honorable |
| | ) | Moira S. Johnson, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1   Plaintiff Jai Prakash appeals from an order of the circuit court of Cook County that

dismissed with prejudice his two-count amended complaint, which alleged claims of intentional

infliction of emotional distress (IIED) and defamation *per se* against defendant Satish Parulekar.

¶ 2   On appeal, plaintiff argues that he sufficiently pled his IIED and defamation claims, he did

not release those claims in a settlement agreement with the university, and he produced clear and

convincing evidence that defendant's acts were not immunized from liability.

¶ 3    For the reasons that follow, we reverse the judgment of the circuit court.[1]

¶ 4                                    I. BACKGROUND

¶ 5    Plaintiff and defendant were both tenured professors of chemical engineering at Illinois Institute of Technology (IIT). In 2008, plaintiff eliminated the position of associate chair of the chemical and biological engineering department, which at the time was occupied by defendant. Later, in 2011, defendant became the department's acting chair, and plaintiff reported to him. Also in 2011, plaintiff appointed a research professor who worked on plaintiff's off-site research project.

¶ 6    According to plaintiff, defendant retaliated against him for eliminating the associate chair position by severely harassing plaintiff in 2011 and 2012. This alleged harassment included defendant, as the department chair, initiating in 2012 an investigation of plaintiff's research projects.

¶ 7    In August 2013, IIT's dean and a past provost removed defendant from the acting department chair position. On November 6, 2013, that past provost and IIT's general counsel sent defendant emails that stated IIT, after a six-months-long investigation, found no misconduct by plaintiff.

¶ 8    Also on November 6, 2013, plaintiff entered into a settlement agreement with IIT to resolve several claims, including the unauthorized reduction of his salary and his proper actions concerning the appointment of the research professor. Under this agreement, plaintiff received $37,990.55 and other benefits and released IIT and its current and former employees from every

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

waivable claim, damage and liability that he had as a result of any matter from the start of his employment with IIT through November 6, 2013, arising out of or based upon any act, omission or event which occurred or should have occurred prior to November 6, 2013, including, without limitation, any allegation of defamation, IIED, workplace harassment, retaliation, whistleblowing, invasion of privacy, and negligence or any other tort.

¶ 9     In February 2014, defendant made complaints to federal agencies and Argonne National Laboratory, plaintiff's key research funding agency, raising the same allegations against plaintiff of fraud and criminal misuse of federal funds that defendant had raised in IIT's 2012 investigation. Thereafter, Argonne National Laboratory discontinued plaintiff's research project and federal agents conducted a comprehensive investigation, which included inspecting documents, interviewing administrators of IIT and Argonne National Laboratory, and interviewing plaintiff at his home. On February 21, 2014, IIT's general counsel sent a litigation hold letter to IIT individuals, informing them that a federal agency was investigating plaintiff regarding his research projects. When the federal agency concluded its investigation, it found no wrongdoing by plaintiff.

¶ 10     On August 8, 2018, plaintiff filed a complaint against defendant, alleging claims of IIED and defamation *per se* and "seek[ing] redress for a prolonged pattern of misconduct *** spanning over seven (7) years."

¶ 11     Defendant moved to dismiss the complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)), arguing that (1) plaintiff's pleading could not rely on any events before November 6, 2013, because his settlement agreement with IIT limited the time and scope of his claims, (2) any defamation claims before August 8, 2017 were barred as

outside the one-year statute of limitations, and (3) plaintiff's alleged embarrassment was not sufficient to plead an IIED claim.

¶ 12    On March 7, 2019, the trial court granted the 2-615 portion of defendant's motion to dismiss, reserved ruling on the 2-619 portion of the motion, and granted plaintiff leave to file an amended complaint.

¶ 13    Plaintiff's amended complaint alleged against defendant (count I) a claim of IIED based on defendant's pattern of egregious misconduct each year from 2011 to 2018, which was intended to destroy plaintiff's research, projects and career, was extreme and outrageous and intended to inflict severe emotional distress, and caused plaintiff to suffer extreme emotional, mental, physical and financial distress.

¶ 14    Specifically, plaintiff alleged that defendant's conduct before November 6, 2013 (the effective date of the settlement agreement) included making false statements and maliciously providing false information about plaintiff's employment contracts and changing the contract language without justification or notice to reduce plaintiff's $130,000 nine-month base salary to $118,755; harassing plaintiff by questioning his 2011 appointment of the research professor and falsely stating to IIT's dean, officials, past provosts, counsel, faculty and others that plaintiff had engaged in fraudulent conduct and criminal activity by misusing federal funds when he appointed the research professor; initiating in 2012, pursuant to defendant's authority as the department chair, a false, selective and retaliatory investigation by IIT of plaintiff's research projects; sending to the home dean and colleagues of the appointed research professor malevolent emails that disclosed his private and confidential family information and caused him to resign from his position as a key member of plaintiff's research group; and in May 2013 sharing with two IIT professors, who had

no role in and were unaware of IIT's investigation of plaintiff, a confidential letter from a past provost to plaintiff that contained defamatory information about plaintiff regarding the investigation.

¶ 15    Furthermore, plaintiff alleged that defendant's conduct after the November 2013 effective date of the settlement included knowingly making false complaints in February 2014 to federal agencies and Argonne National Laboratory that accused plaintiff of fraud and misusing federal funds when he appointed the research professor in 2011, despite defendant's knowledge that IIT's investigation had found no wrongdoing by plaintiff; in 2015 making false and defamatory statements about plaintiff to IIT faculty members who were not aware of IIT's prior investigation of plaintiff; in February 2016 sending to 23 individuals a letter alleging that defendant had received an anonymous threat letter and alluding to the federal investigation of plaintiff; in August 2016 sending to 28 people a letter falsely accusing "individual C," whom the letter recipients would understand to be plaintiff, of sending the anonymous threat letter to defendant, invading defendant's home and accessing his computers; in 2017 falsely blaming plaintiff for sending defendant a letter; and sending 26 people an email on March 4, 2018, which stated that a federal agency was investigating federal grants awarded to an individual, and including attachments to ensure the recipients would identify plaintiff as the subject of the investigation. Plaintiff asserted that defendant's false 2014 complaints to federal agencies resulted in federal agents interviewing plaintiff at his home for over one hour in front of his family, which was the most embarrassing, humiliating and traumatic event plaintiff or his family ever endured, destroyed plaintiff's mental and physical health, and caused him to have recurring nightmares and seek medical help.

¶ 16    Plaintiff also alleged against defendant (count II) a claim of defamation *per se*, based on false statements defendant made about plaintiff in defendant's March 4, 2018 email and attached March 2, 2018 letter. Plaintiff alleged that this email imputed to him the commission of an indictable criminal offense, prejudiced him in his profession, and suggested that he lacked integrity in the performance or discharge of his employment duties. Furthermore, defendant published this correspondence to numerous third parties and caused plaintiff to suffer emotionally and financially.

¶ 17    Defendant moved to dismiss the amended complaint under section 2-619.1 of the Code, arguing plaintiff's amended complaint should be dismissed under (1) section 2-619(a)(6) of the Code because his claims based on conduct before November 6, 2013 were released under the terms of his settlement agreement; (2) section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2016)), because plaintiff's attempt to sue defendant for reporting him to the federal government constituted retaliation against defendant for engaging in his right to petition the government, which was protected conduct under the Citizen Participation Act (Act) (735 ILCS 110/1, *et seq.* (West 2016)); and (3) section 2-615 of the Code because plaintiff failed to sufficiently plead a cause of action for IIED.

¶ 18    In his response, plaintiff argued that (1) he did not release any claims against defendant, who was neither a party to nor a third-party beneficiary of plaintiff's settlement agreement with IIT; (2) the Act did not bar plaintiff's claims because defendant's defamatory statements to many people with no connection to the government were not protected, defendant did not intend to secure favorable government action but rather acted to harass plaintiff, and plaintiff's complaint was filed years after defendant's complained-of conduct and thus was not retaliatory; and (3) plaintiff

sufficiently pled his IIED claim against defendant, who had been the department chair, based on his position of power over plaintiff and pattern of misconduct every year from 2011 to 2018.

¶ 19    On August 14, 2019, the trial court granted defendant's motion to dismiss the amended complaint with prejudice pursuant to section 2-619(a)(9) of the Code and the immunities afforded by the Act. Plaintiff appealed.

¶ 20                                    II. ANALYSIS

¶ 21    Section 2-619.1 of the Code "permits a party to combine a section 2-615 motion to dismiss based upon plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based on certain defects or defenses." *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2013). A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). Illinois is a fact pleading state, and a court cannot rely upon conclusions of law or conclusory factual allegations unsupported by specific facts in ruling on a 2-615 motion to dismiss. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 741 (2009). A section 2-619 motion "allows for involuntary dismissal of a claim based on certain defects or defenses." *Illinois Graphics Co.*, 159 Ill. 2d at 485. A motion to dismiss pursuant to a release is brought under section 2-619(a)(6) (*People ex rel. Devine v. Time Consumer Marketing, Inc.*, 336 Ill. App. 3d 74, 78 (2002)), and a motion to dismiss based upon the Act is made pursuant to section 2-619(a)(9) (*Sandholm v. Kueker*, 2012 IL 111433, ¶ 54). When ruling on section 2-615 and 2-619 motions, the court should view the pleadings and supporting documents in the light most favorable to the nonmoving party, while accepting as true all well-pleaded facts in the complaint and drawing all reasonable inferences in the nonmoving

party's favor. *Stein v. Krislov*, 2013 IL App (1st) 113806, ¶ 12; *Reynolds v. Jimmy John's Enterprise, LLC*, 2013 IL App (4th) 120139, ¶ 25.

¶ 22     This court reviews the dismissal of a complaint under sections 2-615 and 2-619 *de novo*. *Dawson v. City of Genesco*, 2018 IL App (3d) 170625, ¶¶ 11, 17; see also *Thomas v. Weatherguard Construction Co., Inc.*, 2015 IL App (1st) 142785, ¶ 63 (*de novo* consideration means the appellate court performs the same analysis that a trial judge would perform). This court may affirm the circuit court's dismissal of a complaint "on any basis supported by the record." *Dawson*, 2018 IL App (3d) 170625, ¶ 11.

¶ 23                                     A. The Effect of the 2013 Settlement Agreement

¶ 24     Defendant argues that plaintiff's amended complaint was subject to dismissal under section 2-619(a)(6) of the Code because the settlement agreement between plaintiff and IIT prevented plaintiff from relying on any allegations of defendant's conduct before the November 6, 2013 effective date of that agreement to support plaintiff's claims of IIED and defamation.

¶ 25     "A release 'is the abandonment of a claim to the person against whom the claim exists.' " *Borsellino v. Putnam*, 2011 IL App (1st) 102242, ¶ 103. A release is governed by contract law and the language of the release should be given its plain meaning. *Farmers Auto Insurance Association v. Wroblewski*, 382 Ill. App. 3d 688, 696-97 (2008). "Where the terms of a contractual release are clear and explicit, a reviewing court must enforce them as written." *Id*. at 697. "The interpretation of a contract is subject to *de novo* review." *In re Liquidation of Lumbermens Mutual Casualty Co.*, 2018 IL App (1st) 171613, ¶ 62. "[W]hen a motion to dismiss is based upon a release, the burden *** shifts to the plaintiff to sufficiently allege and prove that a material issue of fact exists that would invalidate the release." *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1005 (2010).

¶ 26 We described in detail above the relevant provisions of the 2013 settlement agreement between plaintiff and IIT, and our review of the plain terms of that agreement establishes that plaintiff released and fully discharged IIT and its current and past employees from all claims arising before November 6, 2013, including any claims for defamation and IIED. Defendant was an employee of IIT during the relevant time period, and defendant submitted an affidavit from an appropriate custodian of IIT's records, who verified the authenticity of the copy of the 2013 settlement agreement contained in the record. Furthermore, even though the settlement agreement did not specifically name defendant as a third-party beneficiary, the agreement adequately defined a class of individual beneficiaries, *i.e.*, current and past employees of IIT, of which defendant was clearly a member. See *Crawford v. Belhaven Realty, LLC*, 2018 IL App (1st) 170731, ¶ 55 (a third party has rights under a contract if he is an intended beneficiary, *i.e.*, someone whom the parties intended to directly benefit by the performance of the contract, and courts determine whether a third-party beneficiary is intended by considering the language of the contract and the circumstances surrounding its execution). Finally, because the settlement agreement is not ambiguous, we do not consider the emails from members of IIT, which plaintiff offered to support his claim that IIT indicated he could properly file these IIED and defamation claims against defendant. See *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000).

¶ 27 We conclude that plaintiff released all claims against defendant arising out of pre-November 6, 2013 conduct. Accordingly, we review the dismissal of plaintiff's IIED and defamation claims absent any allegations of defendant's conduct before that date.

¶ 28 Consequently, plaintiff's IIED claim is limited to his allegations that defendant knowingly made false complaints to federal agencies and Argonne National Laboratory in February 2014 that

accused plaintiff of fraud and misusing federal funds when he appointed a research professor in 2011 to work on plaintiff's off-site research project; based on defendant's knowingly false complaints, a federal agency conducted a comprehensive investigation, which included two federal agents interviewing plaintiff for over one hour at his home in front of his family; that interview was the most embarrassing, humiliating and traumatic event plaintiff or his family ever endured; and that investigation and interview destroyed plaintiff's mental and physical health and caused him to have recurring nightmares and seek medical help.

¶ 29    Also as part of his IIED claim, plaintiff alleged defendant engaged in a prolonged pattern of misconduct that included making false and defamatory statements about plaintiff in 2015 to IIT faculty who were not aware of IIT's prior investigation of plaintiff; sending to 23 individuals in February 2016 a letter alleging that defendant had received an anonymous threat letter and alluding to the federal investigation of plaintiff; sending to 28 people in August 2016 a letter falsely accusing "individual C," whom the letter recipients would understand to be plaintiff, of sending the anonymous threat letter to defendant, invading defendant's home and accessing his computers; falsely blaming plaintiff in 2017 for sending defendant a letter; and sending 26 people an email on March 4, 2018, which stated that a federal agency was investigating federal grants awarded to an individual, and including attachments to ensure the recipients would identify plaintiff as the subject of the investigation. As a result of defendant's prolonged pattern of misconduct, plaintiff suffered extreme emotional, mental, physical and financial distress.

¶ 30    Furthermore, plaintiff's defamation *per se* claim is limited to his allegations that defendant sent an email on March 4, 2018, to numerous third parties both inside and outside of IIT; this email included a March 2, 2018 letter; defendant stated in these materials that the federal government

was investigating federal grants awarded to plaintiff; defendant implied in these materials, knowingly and falsely, that plaintiff was involved in embezzlement and a financial conspiracy to defraud the government; many of the third-party recipients of defendant's March 2018 materials were not aware of IIT's prior investigation of this matter, which had exonerated plaintiff of any wrong doing; the publication of defendant's March 2018 materials prejudiced plaintiff in his profession and suggested he lacked integrity in the performance or discharge of his employment duties; and this publication caused plaintiff to suffer emotionally and financially.

¶ 31          B. Immunity Based on the Right to Petition the Government

¶ 32    Plaintiff argues the trial court erred when it dismissed with prejudice his IIED and defamation *per se* claims based on immunities afforded under the Act for the protected activity of petitioning the government to obtain favorable government action.

¶ 33    The Act was created as anti-SLAPP legislation. *Sandholm*, 2012 IL 111443, ¶ 33. SLAPPs are lawsuits " 'aimed at preventing citizens from exercising their political rights or punishing those who have done so.' " *Id*. (quoting *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 630 (2010)). "Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction." *Sandholm*, 2012 IL 111443, ¶ 34. "SLAPPs use the threat of money damages or the prospect of the cost of defending against the suits to silence citizen participation." *Wright Development Group, LLC*, 238 Ill. 2d at 630. "The purpose of the Act is to give relief, including monetary relief, to citizens who have been victimized by meritless, retaliatory SLAPP lawsuits because of their 'act or acts' made 'in furtherance of the constitutional rights to petition, speech, association, and participation in government.' " *Id*. at 633 (quoting 735 ILCS 110/15 (West 2008)). A motion to

dismiss based on immunity under the Act is properly raised under section 2-619(a)(9) of the Code wherein the legal sufficiency of the plaintiff's complaint is admitted, but the motion asserts that certain defects or defenses outside of the pleadings defeat the claim. *Sandholm*, 2012 IL 111443, ¶ 55.

¶ 34    Plaintiff's lawsuit may only be dismissed due to immunity under the Act if (1) the movant's acts were in furtherance of his rights to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) plaintiff's claims were *solely* based on, related to, or in response to the movant's acts in furtherance of his rights of petition, speech, association, or other participation in government (this prong is satisfied if the movant demonstrates that the lawsuit is meritless and was filed in retaliation of the movant's protected activities to deter him from further engaging in those activities); and (3) plaintiff failed to produce clear and convincing evidence that the movant's acts were not genuinely aimed at procuring favorable government action. 735 ILCS 110/15 (West 2016); *Sandholm*, 2012 IL 111443, ¶¶ 45, 52, 56; *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 21. If the movant meets his burden under the first two prongs of the analysis, the court must decide whether the plaintiff has met his burden under the third prong of the analysis. *Stein v. Krislov*, 2013 IL App (1st) 113806, ¶ 25; 735 ILCS 110/ 10, 15 (West 2016).

¶ 35    If plaintiff's claims genuinely sought relief for damages for the alleged IIED and defamation *per se* by defendant, the claims are not solely based on defendant's rights of petition, speech, association, or participation in government (see *Sandholm*, 2012 IL 111443, ¶ 45), and accordingly, "it is irrelevant whether the defendant['s] actions were 'genuinely aimed at procuring favorable government action, result or outcome.' " (*id*. ¶ 53 (quoting 735 ILCS 110/15 (West

2008))). The clear language of the Act establishes that it was not intended to protect those who commit tortious acts and then seek refuge in the immunity conferred by the Act. *Sandholm*, 2012 IL 111443, ¶ 45.

¶ 36    Addressing plaintiff's IIED claim first, we determine whether defendant's complained-of actions after the November 6, 2013 release were protected under the Act by considering whether his actions were in furtherance of his constitutional rights of petition, speech, association, or participation in government to obtain favorable government action. Defendant's complaints to federal agencies in February 2014 were made to government officials in an effort to obtain favorable government action by way of preventing plaintiff from allegedly misusing federal funds in the appointment of a research professor. See 735 ILCS 110/10 (West 2016); see also *Hytel Group, Inc., v. Butler*, 405 Ill. App. 3d 113, 120 (2010). However, defendant's alleged prolonged pattern of misconduct from 2015 to 2018—*i.e.*, making false and defamatory statements about plaintiff to IIT faculty members who were unaware of IIT's prior investigation of plaintiff and sending numerous people in 2016 and 2018 letters alluding to the federal investigation of plaintiff and falsely accusing him of sending defendant an anonymous threat letter, invading defendant's home and accessing defendant's computers—were not actions in furtherance of defendant's right to petition or participate in government to obtain favorable government action. Defendant's assertion to the contrary is not supported by citation to any relevant authority. *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (A reviewing court is not a repository into which a party may dump the burden of argument or research, and the failure to support an argument with pertinent authority results in forfeiture of the argument.). Defendant cannot credibly argue that his alleged conduct from 2015 to 2018 of sending correspondence to various non-government

people both inside and outside of IIT was an effort to obtain an investigation of plaintiff's alleged misconduct because IIT in 2012 had already conducted its six-months-long investigation and exonerated plaintiff of any wrongdoing and defendant had already filed his complaints with the federal agencies in 2014.

¶ 37    Although defendant met his burden under the first prong of the analysis to obtain immunity under the Act for his complaints to federal agencies in 2014, he did not meet this burden for his alleged prolonged pattern of misconduct from 2015 to 2018 based on his false statements about plaintiff to people who were not members of a government agency. Furthermore, even if a movant's activities were the kind that the Act is designed to protect, a plaintiff's lawsuit is not necessarily deemed a SLAPP and therefore subject to dismissal under the Act. *Stein*, 2013 IL App (1st) 113806, ¶ 16.

¶ 38    Under the second prong of the analysis, defendant has the burden to show that plaintiff's IIED claim was *solely* based on, related to, or in response to defendant's acts in furtherance of his right to petition the government. See *Chicago Regional Council of Carpenters v. Jursich*, 2013 IL App (1st) 113279, ¶ 20. To satisfy this burden, defendant must affirmatively demonstrate that plaintiff's suit was retaliatory and meritless. *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 18. To determine whether plaintiff's IIED claim was retaliatory within the meaning of the Act, we consider (1) the proximity in time between the protected activity and the filing of the complaint, and (2) whether the damages requested are reasonably related to the facts alleged in the complaint and present a good-faith estimate of the injury sustained. See *Ryan*, 2012 IL App (1st) 120005, ¶ 23. Furthermore, a movant "for dismissal under the Act can show that a claim is 'meritless' only 'if a movant disproves some essential element of the nonmovant's claim.' " *Chadha v. North Park*

*Elementary School Association*, 2018 IL App (1st) 171958, ¶ 95 (quoting *Garrido*, 2013 IL App (1st) 120446, ¶ 19).

¶ 39    Plaintiff filed his lawsuit on August 8, 2018, which was over four years after defendant made his February 2014 complaints to the federal agencies. In addition, plaintiff's IIED claim was not intended to chill the protected activities to petition or participate in government because defendant had already participated in the protected activity of petitioning the government in February 2014, plaintiff had already been allegedly injured by defendant's petitioning, and there was no basis for defendant to further petition the government and cause plaintiff further injury. See *Chadha*, 2018 IL App (1st) 171958, ¶ 98. Furthermore, plaintiff, who seeks compensatory damages for his destroyed mental and physical health and extreme emotional and financial distress, does not seek millions of dollars in punitive damages like the classic SLAPP situation (see *id*. ¶ 99), and defendant fails to show that plaintiff's *ad damnum* was unreasonable.

¶ 40    It was defendant's burden to "show that there are undisputed facts that demonstrate plaintiff's claim is meritless." *Ryan*, 2012 IL App (1st) 120005, ¶ 26. Because this court reviews a motion to dismiss under the Act pursuant to section 2-619 of the Code, we must presume the legal sufficiency of plaintiff's IIED claim. *Ryan*, 2012 IL App (1st) 120005, ¶ 22. A claim is meritless if the moving party disproves some essential element of the nonmovant's claim. *Garrido*, 2013 IL App (1st) 120466. Therefore, we may consider whether plaintiff has alleged sufficient facts to show the claim was genuine and not factually baseless. *Sandholm*, 2012 IL 111443, ¶ 45; *Garrido*, 2013 IL App (1st) 120466, ¶ 23.

¶ 41    Defendant argues that plaintiff's IIED claim was meritless because his actions could never rise to the level of extreme and outrageous conduct as a matter of law since much of defendant's

alleged misconduct was barred by the 2013 settlement agreement. As discussed above, we have determined that the settlement agreement released the alleged misconduct of defendant that occurred before November 6, 2013. Nevertheless, plaintiff has alleged that defendant, despite knowing that IIT's investigation had exonerated plaintiff of any wrongdoing and after defendant had reported his complaints in 2014 to the federal agencies, engaged in a prolonged pattern of extreme and outrageous conduct from 2015 to 2018 by making false statements to numerous non-government people that accused plaintiff of, *inter alia*, fraud, misusing federal funds and threatening defendant, all of which caused plaintiff to suffer severe emotional distress. We find that defendant has failed to establish that plaintiff's IIED claim was meritless and retaliatory. We therefore conclude that plaintiff's IIED claim did not qualify as a SLAPP and the trial court erred in dismissing this claim with prejudice under the Act.

¶ 42     Regarding plaintiff's defamation *per se* claim, defendant argues it also was based on his protected right to petition the government. According to the amended complaint and disregarding allegations about defendant's activity before the November 6, 2013 effective date of the settlement agreement, plaintiff alleged defendant sent a March 4, 2018 email to numerous nongovernmental third parties both inside and outside of IIT; this email included a March 2, 2018 letter; defendant stated in these materials that the federal government was investigating federal grants awarded to plaintiff; defendant implied in these materials, knowingly and falsely, that plaintiff was involved in embezzlement and a financial conspiracy to defraud the government; many of the third-party recipients of defendant's March 2018 materials were not aware of IIT's prior investigation of this matter, which had concluded that plaintiff had not engaged in any wrongdoing; the publication of defendant's March 2018 materials prejudiced plaintiff in his profession and suggested he lacked

integrity in the performance or discharge of his employment duties; and this publication caused plaintiff to suffer emotionally and financially by impugning his integrity and affecting his career.

¶ 43    Taking all well-pled facts as true, drawing reasonable inferences in favor of plaintiff, and viewing the pleading in a light most favorable to plaintiff, we conclude that plaintiff's defamation claim was not meritless where defendant failed to satisfy his burden under the first and second prongs of the Act's immunity analysis. Specifically, defendant was not acting to further his right to petition or otherwise participate in government to obtain favorable government action because he had already filed his complaints with the federal agencies in 2014 when he sent his email and attached letter in March 2018 to numerous people who were not affiliated with any government agency. Furthermore, plaintiff's defamation claim was not *solely* based on defendant's acts in furtherance of his right of petition or other participation in government because the lawsuit was filed over four years after defendant filed his complaints with the federal agencies and defendant has not offered any evidence to show that plaintiff's defamation claim lacked merit. The well-pled allegations of the amended complaint show that IIT's six-months-long investigation in 2012 of plaintiff's conduct, including his use of federal funds for his research projects, concluded that he did not engage in any wrongdoing. Furthermore, there is no indication that defendant's complaints to federal agencies in 2014 about plaintiff's alleged misuse of federal funds, embezzlement and financial conspiracy to defraud the government resulted in any findings or actions against plaintiff.

¶ 44    We, therefore, conclude that plaintiff's defamation claim does not qualify as a SLAPP and the trial court erred in dismissing this claim with prejudice under the Act.

¶ 45                              C. Failure to State a Cause of Action

¶ 46    Finally, defendant argues that even if dismissal of the amended complaint was improper under subsections 2-619(a)(6) or (a)(9) of the Code, dismissal is proper under section 2-615 based on plaintiff's failure to state a cause of action for IIED and defamation. Specifically, defendant argues that (1) he did not have a position of power or authority over plaintiff because he was not the department chair at the time of the alleged conduct from 2014 to 2018, (2) the alleged conduct did not constitute extreme and outrageous behavior, and (3) the six alleged incidents that occurred from 2014 to 2018 fall far short of the type of conduct Illinois courts have found actionable for claims of IIED.

¶ 47    To state a cause of action for IIED, a plaintiff must plead that (1) the defendant's conduct was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant knew that severe emotional distress was certain or substantially certain to result from such conduct. *Miller v. The Equitable Life Assurance Society of the United States*, 181 Ill. App. 3d 954, 956 (1989). " 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.' " *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988) (quoting Restatement (Second) of Torts § 46, comment *j*, at 77-78 (1965)). "[T]he tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " *Id*. (quoting Restatement (Second) of Torts § 46, comment *d*, at 73 (1965)). Factors courts may consider to determine whether a defendant's conduct is extreme and outrageous include the intensity and duration of the distress, defendant's degree of power or authority over the plaintiff, defendant's abuse of a position that gives him actual or apparent power to damage the plaintiff's interests, whether defendant reasonably believed that his objective was legitimate, and defendant's

awareness that the plaintiff is susceptible to emotional distress by reason of some physical or mental condition or peculiarity. *McGrath*, 126 Ill. 2d at 86-90.

¶ 48    Stripped of all allegations of conduct before November 6, 2013 concerning released claims, and accepting all well-pleaded facts as true, the count I IIED claim of the amended complaint essentially alleged that for approximately five years defendant intentionally and knowingly made false statements about plaintiff engaging in fraudulent and criminal activity by (1) making false statements to federal agencies and Argonne National Laboratory in 2014 that accused plaintiff of misusing federal funds despite defendant's knowledge that IIT had exonerated plaintiff after conducting a thorough investigation of this same claim; (2) making false and defamatory statements about plaintiff in 2015 to IIT faculty who were not aware of IIT's prior investigation and exoneration of plaintiff; (3) sending to 23 individuals in February 2016 a letter alleging that defendant had received an anonymous threat letter and alluding to the federal investigation of plaintiff; (4) sending to 28 people in August 2016 a letter falsely accusing "individual C," whom the letter recipients would understand to be plaintiff, of sending the anonymous threat letter to defendant, invading defendant's home and accessing his computers; (5) falsely blaming plaintiff in 2017 for sending defendant a letter; and (6) sending 26 people an email on March 4, 2018, which stated that a federal agency was investigating federal grants awarded to an individual, and including attachments to ensure the recipients would identify plaintiff as the subject of the investigation. Plaintiff alleged that as a result of defendant's prolonged pattern of misconduct, plaintiff suffered extreme emotional, mental, physical and financial distress.

¶ 49    Regarding the question of the outrageousness of defendant's conduct, defendant argues that plaintiff's six alleged incidents that occurred from 2014 to 2018 fall far short of the type of

conduct Illinois courts have found actionable for IIED claims. Defendant cites, for example, *Miller v. Linden*, 172 Ill. App. 3d 594, 597 (1988), where the plaintiff's complaint stated an IIED cause of action based on allegations that the defendant went to the plaintiff's residence on 13 separate occasions over a 10-month period and engaged in a variety of harassing conduct that ranged from beating on the door and shouting obscenities to honking her car horn for several minutes— sometimes in the presence of the plaintiff's family and neighbors—and continuing to do so even after being warned by the plaintiff's attorney about the plaintiff's physical and emotional distress.

¶ 50    We conclude that the amended complaint alleged sufficient facts, well beyond mere insults and trivialities, to allege the outrageous conduct element of the tort. The alleged misconduct intensely attacked plaintiff's professional integrity and career for a lengthy duration of five years. Although defendant was not the department chair at the time of the alleged misconduct, he abused his position as a tenured professor to damage plaintiff's reputation and career by using the same false accusations defendant made in 2012 during his tenure as the department chair and broadly publishing those accusations to IIT administration and faculty members and numerous other people in the larger academic and business communities who did not know that IIT's investigation had exonerated plaintiff. Furthermore, based on IIT's exoneration of plaintiff, defendant did not reasonably believe his objective was legitimate. A reasonable trier of fact could easily conclude that defendant's alleged conduct was so outrageous as to be regarded as intolerable in a civilized community.

¶ 51    Additionally, plaintiff pled sufficient facts to demonstrate that he suffered severe emotional, mental, physical and financial distress as a result of defendant's conduct. According to the amended complaint, in every year from 2014 to 2018, defendant knowingly used false

allegations to attack plaintiff's integrity, reputation, research projects, and career and caused him to lose financial support for his research. Plaintiff alleged that defendant's prolonged and pervasive attacks caused plaintiff financial distress, destroyed his mental and physical health, and caused him to have recurring nightmares and seek medical help. These allegations, if proved, establish the severe emotional distress necessary to the tort.

¶ 52    Regarding whether defendant acted intentionally or with the knowledge that severe emotional distress was certain or substantially certain to result, the allegations support this element of the tort. Defendant knew that IIT's six-months-long investigation in 2012 had exonerated plaintiff of any wrongdoing regarding defendant's claims that plaintiff had engaged in fraud and the criminal misuse of federal funds. Nevertheless, defendant, in addition to filing complaints with federal agencies in 2014 regarding these same claims, continued making these false claims to IIT faculty, Argonne National Laboratory and numerous other people for several years. Furthermore, defendant knew that his false claims had adversely affected plaintiff's work and resulted in federal agents conducting a comprehensive review of plaintiff's projects, which included interviews with plaintiff and faculty and administration at IIT and Argonne National Laboratory. Moreover, defendant continued publishing his false allegations to numerous people inside and outside of IIT. Such allegations sufficiently demonstrate that defendant intended or at least knew with reasonable certainty that his conduct would damage plaintiff's reputation, research, and career and cause him to suffer severe emotional distress.

¶ 53    Defendant argues that plaintiff's IIED claim does not rise to the level of intensity or duration that no reasonable person could be expected to endure because Illinois courts have found conduct far more egregious than that alleged by plaintiff here to be non-actionable. To support this

claim, defendant cites *Ulm v. Memorial Medical Center*, 2012 IL App (4th) 110421, ¶ 42, *Vickers v. Abbot Labs*, 308 Ill. App. 3d 393, 411 (1999), *Lundy v. City of Calumet City*, 209 Ill. App. 3d 790, 794 (1991), *Grey v. First National Bank of Chicago*, 169 Ill. App. 3d 936, 945 (1988), and *Gibson v. Chemical Card Services Corp*, 157 Ill. App. 3d 2211, 213 (1987). Defendant's reliance on these cases is misplaced. *Ulm*, *Vickers*, *Lundy*, *Grey* and *Gibson* are distinguishable because those IIED claims were dismissed under motions for summary judgment, not 2-615 motions to dismiss.

¶ 54    Plaintiff's specific pleading of defendant's many acts toward him, as detailed above, indicates, at this pleading stage of the proceedings, extreme and outrageous conduct going beyond mere indignities, annoyances or trivialities, as well as severe emotional distress suffered by plaintiff and an intentional or reckless state of mind on the part of defendant. Accepting the allegations in count I as true, we conclude that plaintiff's amended complaint adequately states a cause of action for IIED.

¶ 55    To state a cause of action for defamation, the plaintiff must allege that (1) the defendant made a false statement about the plaintiff, (2) the defendant made an unprivileged publication of that statement to a third party, and (3) the publication caused damages. *Kainrath v. Grider*, 2018 IL App (1st) 172770, ¶ 32. Relevant to this case, words that impute a person has committed a crime or lacks integrity in performing his employment duties and words that prejudice him in his profession are considered defamation *per se* (*Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 41), *i.e.*, so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed (*Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388, 390 (1995)). "A complaint for defamation

must set forth the words alleged to be defamatory 'clearly and with particularity.' " *Green v. Rogers*, 234 Ill. 2d 478, 495 (2009).

¶ 56    Stripped of all allegations of conduct before November 6, 2013 concerning released claims, and accepting all well-pleaded facts as true, count II of the complaint essentially alleges that defendant sent an email on March 4, 2018 to numerous third parties both inside and outside of IIT; this email included a March 2, 2018 letter; defendant stated in these materials that the federal government was investigating federal grants awarded to plaintiff; defendant implied in these materials, knowingly and falsely, that plaintiff was involved in embezzlement and a financial conspiracy to defraud the government; many of the third-party recipients of defendant's March 2018 materials were not aware of IIT's prior investigation of this matter, which had concluded that plaintiff had not engaged in any wrong doing; the publication of defendant's March 2018 materials prejudiced plaintiff in his profession and suggested he lacked integrity in the performance or discharge of his employment duties; and this publication caused plaintiff to suffer emotionally and financially.

¶ 57    Many of these allegations set forth only a summary of the types of statements that defendant allegedly made instead of a precise and particular account of defendant's alleged statements. This lack of specificity prevents the court from determining as a question of law if the alleged statement is defamatory and prevents defendant from properly formulating a response. See *Green*, 234 Ill. 2d at 492. However, the record before us does not indicate that plaintiff would not be able to allege these facts with the requisite specificity to state a cause of action sufficient to survive a 2-615 motion to dismiss. *RBS Citizens, N.A. v. RTG-Oak Lawn*, 407 Ill. App. 3d 183, 192 (2011). Furthermore, allowing plaintiff leave to amend his defamation claim a second time

would not be futile or prejudicial to defendant where the trial court did not dismiss with prejudice the amended complaint based on a failure to plead a claim under 2-615 of the Code but, rather, based on an erroneous application of the Act under section 2-619 of the Code.

¶ 58                                III. CONCLUSION

¶ 59     For the foregoing reasons, we reverse the judgment of the circuit court that dismissed with prejudice plaintiff's IIED and defamation claims based on immunity afforded under the Act for the protected activity of petitioning the government. We also reject defendant's assertion that section 2-615 of the Code provides another basis to dismiss plaintiff's IIED and defamation claims with prejudice. We remand this cause to the circuit court for further proceedings consistent with this decision.

¶ 60     Reversed and remanded.

---

**No. 1-19-1819**

---

| | |
|---|---|
| **Cite as:** | *Prakash v. Parulekar*, 2020 IL App (1st) 191819 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-8559; the Hon. Moira S. Johnson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Robert T. Kuehl, of Kuehl Law, P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | William T. Eveland and Elizabeth A. Thompson, of Saul Ewing Arnstein & Lehr LLP, of Chicago, for appellee. |

---